**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) | Case No. 20-32021 (DRJ) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Ref. Docket No. 34, 61** |

**SECOND INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362,
363 AND 507, AND BANKRUPTCY RULES 2002, 4001 AND 9014
(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES AND (III) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

Upon the motion, dated April 1, 2020, [Docket No. 34] (the "<u>Motion</u>")[2], of Whiting Petroleum Corporation ("<u>WLL</u>") and its affiliated debtors, each as debtor and debtor in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>"), for entry of interim and final orders (the "<u>Interim Order</u>" and a "<u>Final Order</u>," respectively) under sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>") and the Complex Case Procedures, seeking:

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

[2]     All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

(a)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, to (a) use the Cash Collateral (as defined in paragraph 4(e) below), and all other Prepetition Collateral (as defined in paragraph 4(d) below); and (b) provide adequate protection to the Administrative Agent and the other Secured Parties (each as defined below) under the Seventh Amended and Restated Credit Agreement, dated as of April 12, 2018 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement," and, together with the Security Instruments (as defined in the Credit Agreement) and all other mortgage, security, pledge and guaranty agreements and all other documentation executed by any Debtor in connection with any of the foregoing, each as amended, supplemented or otherwise modified from time to time, the "Credit Documents," and all debts, liabilities and obligations of every kind and nature under the Credit Documents, including all Secured Obligations (as defined in the Credit Agreement), the "Credit Agreement Obligations"), by and among Whiting Oil and Gas Corporation ("WOG"), as borrower, WLL, as parent guarantor, the lenders from time to time party thereto (collectively, the "Lenders") and JPMorgan Chase Bank, N.A., as administrative agent (the "Administrative Agent", together with the Lenders and each other Guaranteed Creditor (as defined in the Guaranty and Collateral Agreement referenced in paragraph 4(a) below), the "Secured Parties");

(b)     subject to entry of the Final Order (as defined in paragraph (e) below), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or any other state or federal law (collectively, the "Avoidance Actions");

(c)     subject to entry of the Final Order, subject and subordinate to the Carve Out (as defined in paragraph 12(a) below), the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined in paragraph 10(b) below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law;

(d)     to schedule, pursuant to Bankruptcy Rule 4001 and the Complex Case Procedures, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the Interim Order (a) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral; and (b) granting adequate protection to the Administrative Agent and the other Secured Parties;

(e)     to schedule, pursuant to Bankruptcy Rule 4001 and the Complex Case Procedures, a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order in form and substance reasonably acceptable to the Administrative Agent, authorizing the Debtors on a final basis to continue to use the Cash Collateral and the other Prepetition Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order; and

(f)     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

2

The Interim Hearing having been held by this Court on April 1, 2020; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the First Day Declarations); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having entered the Interim Order on April 2, 2020 [Docket No. 61]; and the Debtors and the Administrative Agent having agreed to the terms of further interim use of Cash Collateral as set forth in this second interim order (this "Second Interim Order"); and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *The Motion*.  The Motion is granted on an interim basis as set forth herein.  Any objection to, or reservation of rights regarding, the entry of this Second Interim Order to the extent not withdrawn or resolved is hereby overruled on the merits.

2.     *Jurisdiction*.  This Court has core jurisdiction over the Cases commenced on April 1, 2020 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     *Notice*.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee"); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Administrative Agent; (d) the indenture trustee for the Debtors' 5.75% senior unsecured notes due 2021, 6.25% senior unsecured notes due 2023 and 6.625% senior unsecured notes due 2026 (collectively, the "Senior Notes") and the indenture trustee for the 1.25% convertible senior unsecured notes due 2020 (the "Convertible Notes");

3

(e) the ad hoc committee of holders of the Senior Notes and the Convertible Notes (the "Ad Hoc Committee"); (f) the United States Securities and Exchange Commission; (g) the United States Internal Revenue Service; (h) the United States Attorney's Office for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d) and the Bankruptcy Local Rules.

    4.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 24 and 25 below) the Debtors admit, stipulate, and agree that:

> (a)    as of the Petition Date, WLL, WOG, and each of the other Guarantors (as defined in the Guaranty and Collateral Agreement) (collectively, the "Debtor Obligors") were indebted and liable to the Lenders, without defense, counterclaim or offset of any kind, for all of the Credit Agreement Obligations, including without limitation, Loans (as defined in the Credit Agreement) made by the Lenders in the aggregate principal amount of not less than $1,071,966,400.00 under the Credit Agreement and not less than $2,000,000.00 in face amount of undrawn Letters of Credit (as defined in the Credit Agreement), plus accrued and unpaid interest, indemnification obligations, Swap Obligations (as defined in the Credit Agreement), obligations under all Treasury Management Agreements (as defined in the Credit Agreement) with any Lender or an affiliate of a Lender, and out-of-pocket expenses (including the reasonable fees, charges and disbursements of a single primary counsel (Simpson Thacher & Bartlett LLP) to the Administrative Agent (and its affiliates) and the Lenders, collectively, and one local counsel in each applicable jurisdiction) and one financial advisor (Opportune LLP) incurred in connection with the enforcement or protection of the Administrative Agent and the Lenders' rights (but solely to the extent payable under the Credit Agreement); the Credit Agreement Obligations are unconditionally and irrevocably guaranteed by the Guarantors pursuant to the Second Amended and Restated Guaranty and Collateral Agreement, dated as of April 12, 2018 (as amended, supplemented or otherwise modified, the "Guaranty and Collateral Agreement"), among WLL, WOG, the other Debtor Obligors party thereto from time to time and the Administrative Agent;

4

(b)     the Credit Agreement Obligations constitute the legal, valid and binding obligation of the Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under section 362 of the Bankruptcy Code);

(c)     (i) no portion of the Credit Agreement Obligations and no amounts paid at any time to the Administrative Agent or the other Secured Parties in respect of the Credit Agreement Obligations, the Credit Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Credit Agreement Obligations or the Credit Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the Administrative Agent, the other Secured Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(d)     the liens and security interests granted by the Debtor Obligors to the Administrative Agent to secure the Credit Agreement Obligations for the benefit of the Administrative Agent and the other Secured Parties pursuant to and in connection with Credit Documents, including without limitation, the Security Instruments, are valid, binding, perfected, enforceable, first priority liens and security interests on the real and personal property of the Debtor Obligors constituting "Collateral" as defined in the Credit Agreement and the Security Instruments, which are substantially all of the Debtors' assets and include without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures, hydrocarbons, books and records, documents, instruments, general intangibles and letter-of-credit rights deriving from or pertaining to the Mortgaged Properties (as defined in the Credit Agreement and the Security Instruments)), certain pledged securities, deposit accounts (other than accounts expressly excluded), investment property, and proceeds and products of each of the foregoing (all such "Collateral," including the Cash Collateral (as defined in paragraph 4(e) below), are collectively referred to herein as the "<u>Prepetition Collateral</u>"), are subject in each case to permitted exceptions under the Credit Documents, and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; *provided* that the liens and security interests granted in the Prepetition Collateral shall be subject and subordinate to (i) the Carve Out, (ii) liens and security interests granted to secure the Adequate Protection Obligations, and (iii) valid, perfected, and unavoidable liens permitted under the Credit Agreement, to the extent such liens are permitted to be senior to the liens of the Administrative Agent and exist as of the Petition Date (including, for the avoidance of doubt, valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code); and

(e)     all of the Debtors' existing cash and all cash (1) constituting Prepetition Collateral; (2) constituting proceeds, products, rents, or profits of property of

Prepetition Collateral; or (3) subject to the Secured Parties' rights of setoff constitutes cash collateral (the "Cash Collateral").

5.    *Release.*   Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 24 and 25 below), the release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 5 shall be deemed effective upon entry of the Interim Order.  The Debtors forever and irrevocably (i) release, discharge, and acquit the Administrative Agent and the other Secured Parties, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Administrative Agent or the other Secured Parties and the Debtors, including any equitable subordination claims or defenses, with respect to or relating to the Credit Agreement Obligations, the Credit Documents, the Debtors' attempts to restructure the Credit Agreement Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of the Interim Order or this Second Interim Order and the use of Cash Collateral hereunder, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Administrative Agent and the other Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Credit Agreement Obligations.  The admissions, stipulations, agreements, and releases set forth in this Second Interim Order are based upon and consistent with the results of the

Debtors' investigation of the Secured Parties' liens and claims as of the date of the Interim Order. Nothing in this Second Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent and the other Secured Parties any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts; *provided* that nothing in this Second Interim Order shall release any claims against a Releasee that a court of competent jurisdiction determines, pursuant to a final, non-appealable order, results primarily from the actual fraud, gross negligence, or willful misconduct of such Releasee.

6.   *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)   Good cause has been shown for the entry of this Second Interim Order.

(b)   The Debtors have an immediate need to use the Prepetition Collateral, including Cash Collateral, to, among other things, fund the orderly continuation of their businesses, pay their operating expenses and preserve the going concern value of the Debtors.

(c)   The terms of the use of the Prepetition Collateral pursuant to this Second Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)   The terms of the use of the Prepetition Collateral pursuant to this Second Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent and the other Secured Parties and, pursuant to Bankruptcy Code sections 105, 361 and 363, the Administrative Agent and the other Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Second Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)   The Debtors have requested entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d) and the Complex Case Procedures. Absent granting the interim relief sought by this Second Interim Order, the Debtors' estates could be immediately and irreparably harmed. The use of the Prepetition Collateral in accordance with this Second Interim Order is in the best interest of the Debtors' estates.

7.      *Authorization of Use of Cash Collateral and Prepetition Collateral.*  The Debtors are hereby authorized to use the Prepetition Collateral, including Cash Collateral, during the period from the Petition Date through and including the Termination Date (as defined in paragraph 13 below) for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases, subject to the terms hereof including the Budget (as defined in paragraph 8 below); and (ii) adequate protection payments to the Administrative Agent and the other Secured Parties, as provided herein.  All post-petition distributions and transfers by a Debtor to any other Debtor (each, a "Debtor Transferee") shall constitute an allowed administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to the 507(b) Claims (as defined in paragraph 10(a) below) against such Debtor Transferee.

8.      *Consent by the Administrative Agent.*  The Administrative Agent consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions contained in this Second Interim Order, which consent has been supported or unopposed by the Required Lenders (as defined in the Credit Agreement) after receipt of notice and shall be deemed sufficient under the circumstances for purposes of this Second Interim Order.  All use of Cash Collateral by the Debtors shall be consistent with a two-week budget annexed hereto (the "Budget") which, for the avoidance of doubt, comprises the weeks beginning on April 18, 2020, and April 25, 2020 in the 13-week budget provided to the Lenders on April 8, 2020.  On or before April 29, 2020, the Debtors shall deliver to (i) the Administrative Agent and its counsel and financial advisor and (ii) the counsel for the Ad Hoc Committee and its financial advisor an updated 13-week budget, subject to approval by the

Administrative Agent. Concurrently and related to the 13-week budget, the Debtors shall negotiate in good faith with the Administrative Agent with respect to mutually acceptable covenants which will be set forth in the Final Order, failing which all parties' rights are reserved pursuant to paragraph 21 hereof. On or prior to each of April 29, 2020 and May 6, 2020, by 5:00 p.m. (prevailing Eastern Time), the Debtors shall deliver to the Administrative Agent and its counsel and financial advisor a variance report (a "Variance Report") setting forth the Debtors' actual cash flow for the immediately preceding one week period compared to then existing Budget. For purposes of this Second Interim Order, the Debtors shall ensure that during interim period there shall not be an unfavorable variance by 10.0% or more from the "Total Operating Disbursements" (on a consolidated basis) (as such term is set forth in the Budget), tested weekly (a "Non-Permitted Variance") (*i.e.,* actual Total Operating Disbursements shall not be more than 110.0% of the forecasted Total Operating Disbursements for the week being tested); *provided* that Allowed Professional Fees (as defined in paragraph 12(a) below), payments to the professional advisors of the Administrative Agent and payments to the U.S. Trustee shall not be subject to such operating disbursement test (such variances permitted under this paragraph, the "Permitted Variances"). Each proposed budget provided to the Administrative Agent shall be of no force and effect unless and until it is approved by Administrative Agent (such consent not to be unreasonably withheld) and until such approval is given, the prior Budget shall remain in effect; *provided* that if the Administrative Agent does not provide the Debtors with written notice (e-mail shall suffice) that it does not approve a proposed budget within five (5) business days after receipt thereof, the Administrative Agent shall be deemed to have approved such proposed budget as the revised Budget. The Administrative Agent shall have no liability for consenting to the Debtors' use of the Cash Collateral and other Prepetition Collateral

pursuant to the terms of this Second Interim Order, nor shall it have any liability for any consent to the use of Cash Collateral as provided herein.

9.     *Entitlement to Adequate Protection.*  The Administrative Agent and the other Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value (if any) of the Administrative Agent's or any Secured Party's interest in the Prepetition Collateral to the fullest extent permitted under the Bankruptcy Code, including as a result of diminution (if any) from the sale, lease or use by the Debtors of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such diminution in value, a "Diminution in Value").

10.     *Adequate Protection Claims and Liens*.

As adequate protection, the Administrative Agent and the other Secured Parties are hereby granted the following claims, liens, rights and benefits:

(a)     Section 507(b) Claims.  The adequate protection obligations, solely to the extent of any Diminution in Value (the "Adequate Protection Obligations"), shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to the Carve Out.

(b)     Adequate Protection Liens.  As security for and solely to the extent of any Diminution in Value, the Adequate Protection Obligations are effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Administrative Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Administrative Agent for the benefit of itself and the other Secured Parties (all property identified in clauses (1), (2), (3) and (4) below being

10

collectively referred to as the "Adequate Protection Collateral"), subject and subordinate only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

(1)    First Priority on Unencumbered Property.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under section 549 of the Bankruptcy Code), and the proceeds of all of the foregoing, *provided* that the Unencumbered Property shall not include the Avoidance Actions, but upon the entry of the Final Order, the Unencumbered Property shall include, and the Adequate Protection Liens  shall attach to, any proceeds or property recovered in respect of any Avoidance Action; *provided*, *further*, that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Second Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof.

(2)    Liens Junior to Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (1) or (3) of this paragraph 10(b)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent;

*provided* that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Second Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof.

(3) <u>Liens Senior to Certain Existing Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired; *provided* that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Administrative Agent or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Administrative Agent; *provided, further*, that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Second Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof.

(4) <u>Status of the Adequate Protection Claims</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (ii) except as otherwise set forth in clauses (1), (2) and (3) of this paragraph 10(b), subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

11. *Additional Adequate Protection.*

As additional adequate protection to the Administrative Agent and the Secured Parties:

(a) <u>Payments</u>: The Debtors are authorized and directed to pay to the Administrative Agent for the ratable benefit of the Secured Parties: (i) no later than three (3) business days after entry of the Interim Order, all accrued and unpaid interest, fees and costs due and payable under the Credit Agreement as of the Petition Date

(including, without limitation, interest on Loans and accrued fees owing to the Administrative Agent), in each case, calculated based on the non-default rate set forth in the Credit Agreement or other applicable documents; and (ii) on the last business day of each calendar month after the entry of the Interim Order, all accrued and unpaid post-petition interest, fees and costs, in each case, calculated based on the non-default rate (except as set forth in clauses (x) through (z) below), due and payable under the Credit Agreement (including, without limitation, breakage costs, accrued fees owing to the Administrative Agent, and interest on Loans), except that, notwithstanding the foregoing, (x) in case of interest on Loans, such interest shall accrue at a rate *per annum* equal to two percent (2%) plus the rate applicable to Eurodollar Loans as provided in section 3.02 of the Credit Agreement as of the Petition Date, (y) in the case of the Letter of Credit participation fee as provided in Section 3.05(b)(i), such fee shall accrue at the rate set forth in such section plus two percent (2%), and (z) in the case of the Letter of Credit fronting fee as provided in section 3.05(b)(ii) of the Credit Agreement, such fee shall accrue at a rate of 0.25% *per annum*; *provided* that, during the post-petition period and so long as a Termination Event (as defined in paragraph 13 below) has not occurred, the Debtors may maintain Eurodollar Loans with Interest Periods not to exceed one month upon the expiration of existing Eurodollar contracts (each undefined term in this proviso shall have the meaning set forth in the Credit Agreement).

(b)  <u>Fees and Expenses</u>:  The Debtors are authorized and directed to pay the reasonable and documented fees, costs and expenses incurred or accrued by the Administrative Agent, including without limitation, the reasonable fees and documented expenses of legal counsel (including Simpson Thacher & Bartlett LLP as primary outside counsel and local counsel in each applicable jurisdiction), Opportune LLP, as financial advisor, and other professionals, advisors and experts engaged from time to time by or on behalf of the Administrative Agent.  The payment of such fees, costs and expenses shall be made within fifteen (15) days after the receipt by the Debtors, the U.S. Trustee and any Committee of invoices therefor.  The invoices shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; *provided*, *however,* that the Administrative Agent or its counsel shall submit copies of the Administrative Agent's legal counsels' and financial advisor's invoices to the U.S. Trustee and any Committee, and the Debtors, the U.S. Trustee and any Committee shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, *provided* that the Debtors shall pay any undisputed portion of such fees, costs and expenses within fifteen (15) days after the initial presentment to the Debtors of such

invoice. On the third business day following entry of the Interim Order, the Debtors shall pay any accrued but unpaid fees of legal counsel (including Simpson Thacher & Bartlett LLP and local counsel), Opportune LLP, as financial advisor, and other professionals engaged by or on behalf of the Administrative Agent through the date of the entry of this Second Interim Order (whether incurred before or after the Petition Date).

(c) <u>Other Covenants</u>: The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first-day" order. The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent at least five (5) business days prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease. The Debtors shall comply with the covenants contained in sections 8.05 and 8.06 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(d) <u>Reporting</u>: The Debtors shall comply with the reporting requirements set forth in Section 8.01 of the Credit Agreement (other than the requirement to deliver a compliance certificate under Section 8.01(c) of the Credit Agreement). Without limiting the preceding sentence, the Debtors shall promptly provide documents, reports or analyses as may be reasonably requested by the Administrative Agent or its financial advisor in connection with analyzing the Budgets or proposed Budgets, evaluating compliance with the Budget or any approval or consent thereof.

(e) <u>Access to Records</u>: In addition to, and without limiting, whatever rights to access the Secured Parties have under their respective Credit Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Administrative Agent (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

(f) [*Reserved*].

12. *Carve Out.*

(a) <u>Carve Out</u>. As used in this Second Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Creditors' Committee  pursuant to section 328 or 1103 of the Bankruptcy

Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the Administrative Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $5.0 million incurred after the first business day following delivery by the Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>").  For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other electronic means) by the Administrative Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon termination of the Debtors' right to use Cash Collateral by the Lenders, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)  <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the Administrative Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Administrative Agent for the benefit of the Secured Parties, unless the Credit Agreement Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "<u>Post-Carve Out Amounts</u>"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Administrative Agent for the benefit of the Secured Parties, unless the Credit Agreement Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Credit Documents or this Second Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 12(b), then, any excess funds in one of the

Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 12(b), prior to making any payments to the Administrative Agent or any of the Debtors' creditors, as applicable. Notwithstanding anything to the contrary in the Credit Documents or this Second Interim Order, following delivery of a Carve Out Trigger Notice, the Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Administrative Agent for application in accordance with the Credit Documents. Further, notwithstanding anything to the contrary in this Second Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the Credit Documents) or increase or reduce the Credit Agreement Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Second Interim Order or in any Credit Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the Credit Agreement Obligations.

(c)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Second Interim Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

13.     *Termination.*  The Debtors' right to use the Cash Collateral pursuant to this Second Interim Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding on the earliest to occur of (i) the date that is forty-five (45) days after the

16

Petition Date (unless such period is extended by mutual agreement of the Administrative Agent and the Debtors, which extension may be documented by email) if the Final Order has not been entered by this Court on or before such date (provided that such forty-five (45)-day period shall be automatically extended by five (5) days to the extent it is not reasonably feasible to hold and conclude a final hearing (if necessary) prior to the expiration of such forty-five (45)-day period as a result of the closure of the Bankruptcy Court due to the events or circumstances surrounding the virus known as COVID-19 (the "Pandemic"), and the Required Lenders and the Administrative Agent shall be deemed to have automatically agreed to such extension), and (ii) five (5) business days (any such five-business-day period of time, the "Default Notice Period") following the delivery of a written notice (a "Default Notice") by the Administrative Agent or the Required Lenders to the Debtors, the U.S. Trustee, any statutory committee, if any, of the occurrence of any of the events set forth in clauses (a) through (q) below (unless waived in writing by the Administrative Agent and the Required Lenders; e-mail shall suffice); *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Second Interim Order; *provided*, *further*, that if a hearing to consider any relief in connection with the delivery of the Default Notice or continued use of Cash Collateral is requested to be heard within such Default Notice Period but is scheduled for a later date by the Court as a result of the Court's own calendar or constraints resulting from the Pandemic, the Default Notice Period shall be automatically extended to the date of such hearing, but in any event not more than ten (10) business days from the delivery of the Default Notice (the events set forth in clauses (a) through (q) below are collectively referred to herein as the "Termination Events"):

       (a)      Failure of the Debtors to make any payment under this Second Interim Order to the Administrative Agent or other Secured Parties on the date such payment becomes due (other than payments required pursuant to paragraph 11(a) of this Second Interim Order, which payments shall be made as required therein);

17

(b)     Other than with respect to clauses (a), (d), (f) and (g) of this paragraph 13, failure of the Debtors to: (i) comply with any material provision of this Second Interim Order; or (ii) comply with any other covenant or agreement specified in this Second Interim Order (other than those described in clause (i) above) in any material respect and, in each case, such failure to comply with any such other covenant or agreement shall continue unremedied for five (5) business days following notice by the Administrative Agent of such failure;

(c)     The Debtors shall or shall seek to create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Second Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Agreement;

(d)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Second Interim Order without the consent of or that is not in form and substance reasonably acceptable to the Administrative Agent (e-mail shall suffice);

(e)     The Debtors shall or shall seek to create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claims (other than the Carve Out);

(f)     The Court shall have entered an order dismissing any of the Cases;

(g)     The Court shall have entered an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(h)     The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Cases, unless consented to in writing by the Administrative Agent (e-mail shall suffice);

(i)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Credit Agreement Obligations or asserting any other cause of action against and/or with respect to the Credit Agreement Obligations, the Prepetition Collateral securing the Credit Agreement Obligations or the Administrative Agent or other Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party; *provided* that the if the Debtors provide any response to any discovery request, or make a witness available for deposition, such action shall not be a violation of this clause (i));

(j)     The Court shall terminate or shorten the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

18

(k)   The entry of an order in the Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code;

(l)   The entry of an order granting relief from  the automatic stay imposed by section 362 of the Bankruptcy Code) authorizing any party to proceed against any material asset of the Debtors or that would materially or adversely affect the Debtors' ability to operate their business in the ordinary course;

(m)   The Debtors shall or shall seek to file a plan of reorganization that is not in form and substance reasonably acceptable to the Administrative Agent and the Required Lenders or shall seek to modify, amend or waive any provision of a plan of reorganization previously deemed acceptable by the Administrative Agent and the Required Lenders without the consent of the Administrative Agent and the Required Lenders (e-mail shall suffice); provided that no such consent shall be necessary if such plan of reorganization provides for customary releases and payment in full in cash of all unpaid Credit Agreement Obligations, Adequate Protection Obligations, and any other unpaid obligations owed to the Secured Parties pursuant to this Second Interim Order;

(n)   The entry of any post-petition judgment against any Debtor in excess of $15 million;

(o)   There shall occur any Non-Permitted Variance;

(p)   Following the effectiveness of the Restructuring Support Agreement (which shall be substantially in the form of the draft dated as of April 1, 2020 delivered to counsel to the Administrative Agent and shall incorporate the term sheet annexed to the Stein Declaration), the occurrence of any event under section 13 of the Restructuring Support Agreement entitled "Termination Events" or any modification to the Restructuring Support Agreement that would or would reasonably be expected to have an adverse effect on the Administrative Agent or other Secured Parties, it being understood and agreed that the extension of any Milestones (as defined in the Restructuring Support Agreement) shall be deemed to have an adverse effect on the Administrative Agent and the other Secured Parties.

(q)   The payment of any prepetition claims against the Debtors that are junior in interest or right to the liens and mortgages on the Prepetition Collateral, other than as permitted by an order entered in the Cases.

14.   *Remedies upon the Termination Date.*  The Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for any Committee, counsel for the Ad Hoc Committee and the U.S. Trustee) of the occurrence of any Termination Event.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and

(b) subject and subordinate to the Carve Out, the Administrative Agent and each Secured Party may (i) setoff amounts in any account of the Debtors maintained with the Administrative Agent or such Secured Party, respectively, to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Credit Documents, this Second Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations; *provided*, that prior to the exercise of any such rights by the Administrative Agent set forth in clause (b) above, (x) counsel for the Administrative Agent shall give five (5) business days' notice (with such notice filed on the docket using the CM/ECF Code for an emergency pleading) to the Debtors, counsel for any committee, counsel for the Ad Hoc Committee and the U.S. Trustee, which notice may be concurrently sent with the Default Notice, and (y) the Court shall hold an emergency hearing with respect to the subject matter set forth in such notice, if requested by the Debtors, the U.S. Trustee or the Committee (if any); *provided*, *further*, that nothing herein shall impose obligations on the counterparties to Swap Agreements with the Debtors to the extent their actions are not subject to the automatic stay. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions. Subject to paragraph 21, in any hearing regarding any exercise of rights or remedies, the only issues that may be raised by any of the Debtors or the U.S. Trustee in opposition thereto shall be (x) whether, in fact, the Termination Date shall have occurred and (y) what is the quantum of the Adequate Protection Obligations, and each of the Debtors and the U.S. Trustee hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent and the other Secured Parties set forth in this Second Interim Order or the Credit

Documents. Any delay or failure of the Administrative Agent or a Secured Party to exercise rights under any Credit Document or this Second Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Credit Document. Subject and subordinate to the Carve Out, the Administrative Agent shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Credit Documents and, subject to the entry of the Final Order, in no event shall the Administrative Agent or the other Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent or the other Secured Parties under this Second Interim Order shall survive the Termination Date.

15.     *Lifting of Automatic Stay.* The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to (i) permit the Debtors to grant and (as applicable) perfect the Adequate Protection Liens and 507(b) Claims and to incur all liabilities and obligations under this Second Interim Order, (ii) authorize the Administrative Agent or the other Secured Parties to retain and apply any applicable payments hereunder, and (iii) permit the Administrative Agent or the other Secured Parties to apply the proceeds of any Swap Agreement that has been entered into with a Lender and that is terminated or unwound to repay the Credit Agreement Obligations (or to setoff against such Credit Agreement Obligations) in accordance with the terms of the Credit Documents; *provided* that during the Default Notice Period, unless otherwise ordered by the Court, the automatic stay under section 362 of the Bankruptcy Code shall remain in effect; *provided*, *further*, that the Debtors

and all other persons reserve all rights with respect to the application of proceeds of any Swap Agreement or the setoff of such proceeds against such Credit Agreement Obligations with respect to any Swap Agreement entered into with a non-Lender, and the proceeds of any such terminated Swap Agreement that are owed to the Debtors ("Non-Lender Hedge Proceeds") may be deposited into a segregated account that is not subject to a deposit account control agreement, and the applicable non-Lender counterparty shall not attempt to set off any Non-Lender Hedge Proceeds against any Credit Agreement Obligations until after notice and a hearing on the matter, subject to the Adequate Protection Liens, 507(b) Claims, and the Carve Out, without prejudice to any person's rights (or defenses thereto) with respect to claims or interests in or liens against such proceeds.

16.     *Limitation on Charging Expenses Against Collateral*.   Subject and subordinate to the Carve Out, upon entry of the Final Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, the Administrative Agent or the other Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party (e-mail shall suffice), and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent or any of the Secured Parties.

17.     *Payments Free and Clear*.   Subject and subordinate to the Carve Out, any and all payments or proceeds remitted to the Administrative Agent on behalf of the other Secured Parties pursuant to the provisions of this Second Interim Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 19 and 24 of this Second Interim Order), received free and clear of

22

any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

18.     *Section 552(b) of the Bankruptcy Code.*  Each of the Administrative Agent and the other Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the other Secured Parties.

19.     *All Parties' Reservation of Rights.*  All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Secured Parties is not allowed under section 506(b) of the Bankruptcy Code and not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Credit Documents; *provided*, *however*, that the Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

20.     *Reservation of Rights of the Administrative Agent and Secured Parties.*  Notwithstanding any other provision hereof, the grant of adequate protection to the Administrative Agent and the other Secured Parties pursuant hereto is without prejudice to the right of the Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Administrative Agent or the other Secured Parties  under the Credit Documents or under equity or law, and the Administrative Agent and the other Secured Parties expressly

reserve all of their respective rights and remedies whether now existing or hereafter arising under the Credit Documents and/or equity or law in connection with all Events of Default (as defined in the Credit Agreement, and whether arising prior to or after the Petition Date).

21.     *Debtors' Reservation of Rights.*  Notwithstanding anything to the contrary in this Second Interim Order, the entry of this Second Interim Order and the grant of adequate protection to the Secured Parties and the Administrative Agent pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination Date, seek authority (at any time) to use Cash Collateral and the Prepetition Collateral without the consent of the Secured Parties and Administrative Agent, and the Secured Parties and Administrative Agent reserve all of their respective rights with respect to contesting any such motion or request by the Debtors or any other person; *provided* that the Debtors may not utilize Cash Collateral to seek such authority.

22.     *Perfection of Adequate Protection Liens.*

(a)     The Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Administrative Agent shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Second Interim Order.  If the Administrative Agent determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Administrative Agent, and the automatic stay shall be modified to allow such filings.

(b)      A certified copy of this Second Interim Order may, in the discretion of the Administrative Agent  be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Second Interim Order for filing and recording; *provided*, *however*, that the Debtors shall reimburse the Administrative Agent or its respective designees for the payment of any stamp, intangibles, recording or similar tax.

(c)      Effective upon entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the Credit Documents or this Second Interim Order.

23.      *Preservation of Rights Granted Under this Second Interim Order*.

(a)      Except as expressly provided in this Second Interim Order (including with respect to the Carve Out), no claim or lien having a priority senior to or *pari passu* with those granted by this Second Interim Order to the Administrative Agent and Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or

subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than the Carve Out).

(b)     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Second Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Second Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claims, the other administrative claims granted pursuant to this Second Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Second Interim Order, and the Administrative Agent and the other Secured Parties shall be entitled to all of the rights, remedies,

privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

(d)      Subject to paragraphs 19 and 24 of this Second Interim Order, the adequate protection payments made pursuant to this Second Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)      Except as expressly provided in this Second Interim Order, the Adequate Protection Obligations, the 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Administrative Agent and the other Secured Parties granted by the provisions of this Second Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Second Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Second Interim Order, and all other rights and remedies of the Administrative Agent and the other Secured Parties granted by the provisions of this Second Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

24.      *Effect of Stipulations on Third Parties*.  As a result of the Debtors' review of the Credit Documents and the facts related thereto, the Debtors have admitted, stipulated and agreed to various

matters as set forth in paragraphs 4 and 5 above and the stipulations and admissions contained in this Second Interim Order, including without limitation, in paragraphs 4 and 5 of this Second Interim Order, shall be binding upon the Debtors and any successor thereto in all circumstances.  The stipulations and admissions contained in this Second Interim Order, including without limitation, in paragraphs 4 and 5 of this Second Interim Order, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a)  any party in interest (including any Trustee), with requisite standing, has duly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including without limitation, in paragraph 25), challenging the validity, enforceability, priority or extent of the Credit Agreement Obligations or the liens on the Prepetition Collateral securing the Credit Agreement Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Administrative Agent or any of the other Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Credit Agreement Obligations or the Prepetition Collateral by no later than the date that is (i) the earlier of (A) seventy-five (75) days after the date of entry of the Interim Order (or, in the case of any official committee appointed in these Cases, sixty (60) days from the date such committee is appointed, but in no event later than the date that is ninety (90) days from the Petition Date (the "Committee Challenge Deadline")) and (B) the effective date of a confirmed plan of reorganization; and (ii) any such later date agreed to in writing by the Administrative Agent in its sole and absolute discretion or as ordered by the Court (such time period, the "Challenge Period") and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of

28

the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Credit Agreement Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case; (y) the Administrative Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraphs 4 and 5, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Credit Agreement Obligations, the Administrative Agent's liens on the Prepetition Collateral and the other Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Second Interim Order, including without limitation, in paragraphs 4 and 5 of this Second Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Nothing in this Second Interim Order vests or confers on any person, including a Trustee, standing or authority to pursue any

29

cause of action belonging to the Debtors or their estates.  In the event that there is a timely successful challenge brought pursuant to this paragraph 24, the Court shall retain jurisdiction to fashion an appropriate remedy.  Notwithstanding the foregoing, advisors to any Committee appointed in these Cases may investigate the Claims and Liens of the Secured Parties prior to the Committee Challenge Deadline at an aggregate expense not to exceed $50,000.

25.     *Limitation on Use of Collateral*.  The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Second Interim Order.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Credit Documents, or the liens or claims granted under this Second Interim Order or the Credit Documents; (b) assert any Claims and Defenses against any of the Administrative Agent or the other Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent and the Secured Parties hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court without objection from the Administrative Agent.

26.     *Binding Effect; Successors and Assigns*.  The provisions of this Second Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent and the other Secured Parties and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of

any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Secured Parties and the Debtors and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this Second Interim Order, the Administrative Agent and the Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.  For all adequate protection and stay relief purposes throughout the Cases, the Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.  For the avoidance of doubt, such request will survive termination of this Second Interim Order.

27.     *Limitation of Liability*.  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Second Interim Order, subject to entry of the Final Order, the Administrative Agent and the other Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Second Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or the other Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

28.     *No Impact on Certain Contracts/ Transactions.*  No rights of any person under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Second Interim Order as to any contract or transaction of the kind listed in such Bankruptcy Code sections.

29.    *Effectiveness.*  This Second Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Second Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

30.    *Proofs of Claim.*  None of the Administrative Agent nor the other Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph 4 hereof shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Cases or successor cases shall not apply to the Administrative Agent or the other Secured Parties with respect to the Credit Agreement Obligations.  Notwithstanding the foregoing, the Administrative Agent, on behalf of itself and the applicable Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single master proof of claim in the Cases for any claims arising under the Credit Agreement and hereunder (the "Master Proof of Claim").  Any Master Proof of Claim filed by the Administrative Agent shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the other Secured Parties.  The Master Proof of Claim, if filed, shall not be required to identify whether any Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to

the Administrative Agent.  The provisions of this paragraph 30 and the Master Proof of Claim are intended solely for the purpose of administrative convenience.

31.     *Final Hearing*.  The Final Hearing is scheduled for May 6, 2020 at 11:00 a.m., prevailing Central time, before this Court, subject to any procedures or rules implemented by the Court in connection with the Pandemic.  The Debtors shall promptly mail copies of this Second Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall file written objections on the Court's docket no later than April 27, 2020 at 4:00 p.m., prevailing Central time.

32.     *Jurisdiction*.  This Court shall retain jurisdiction to enforce the terms of this Second Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Second Interim Order.

33.     *Controlling Effect of Second Interim Order*.  To the extent any provision of this Second Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Second Interim Order shall control to the extent of such conflict.  Except to the extent expressly amended hereby, the Interim Order remains in full force and effect.


Houston, Texas
Date: [_____], 2020

_____
United States Bankruptcy Judge

33

**Whiting Petroleum Corporation (NYSE:WLL)**
**Cash Flow Forecast**
*(USD in 000s)*

**($MM)**

| Week Ended -> | Wk-1 24-Apr | Wk-2 1-May | 2-Week Total |
|---|---|---|---|
| **RECEIPTS** | | | |
| Oil, Gas, & NGL Receipts | $    77.5 | $    2.9 | $    80.4 |
| Hedge Settlements | - | - | - |
| Revenue Distributions & MVC's | (1.0) | (47.3) | (48.3) |
| JIB Receivables & Non-Op Receipts | 12.6 | 13.6 | 26.3 |
| **Net Receipts** | **89.1** | **(30.7)** | **58.4** |
| | | | |
| **OPERATING DISBURSEMENTS** | | | |
| Payroll & Benefits | 4.4 | 0.6 | 5.0 |
| LOE & GPT | 10.9 | 9.9 | 20.8 |
| CapEx | 11.9 | 11.9 | 23.8 |
| JIB Payable | 2.7 | 2.7 | 5.5 |
| G&A (Non-Payroll) and Tax | 6.3 | 1.4 | 7.7 |
| **Total Operating Disbursements** | **36.3** | **26.5** | **62.8** |
| | | | |
| **OPERATING CASH FLOW** | $    52.8 | $    (57.2) | $    (4.4) |
| | | | |
| **NON-OPERATING DISBURSEMENTS** | | | |
| Restructuring / One-Time Items | - | 0.2 | 0.2 |
| Debt Service | - | 3.9 | 3.9 |
| **TOTAL DISBURSEMENTS** | **36.3** | **30.6** | **66.9** |
| | | | |
| **NET CASH FLOW** | $    52.8 | $    (61.3) | $    (8.5) |