## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) Case No. 20-32021 (DRJ) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## DEBTORS' AMENDED[2] APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF MOELIS & COMPANY LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS, EFFECTIVE AS OF APRIL 1, 2020, (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN 21 DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

[2] This Application is amended solely to include Schedule I to the Latif Declaration.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[3] respectfully state the following in support of this application (this "Application"):

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to retain and employ Moelis & Company LLC ("Moelis") as their financial advisor and investment banker, effective as of April 1, 2020, pursuant to the terms of the engagement letter by and between the Debtors and Moelis, dated as of March 9, 2020 (the "Moelis Engagement Letter"),[4] a copy of which is attached as Exhibit 1 to the Order, (b) waiving certain time-keeping requirements, and (c) granting related relief.  In support of this Application, the Debtors submit the declaration of Bassam J. Latif (the "Latif Declaration"), a Managing Director of Moelis, which is attached hereto as **Exhibit A** and incorporated herein by reference.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined

---

[3]     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Whiting Petroleum Corporation., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] and the *Declaration of Correne S. Loeffler, Chief Financial Officer of Whiting Petroleum Corporation and Whiting Oil and Gas Corporation, in Support of the Debtors' First Day Motions* [Docket No. 33] (the "First Day Declarations").

[4]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Moelis Engagement Letter.

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a), 328(a), and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016, and rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Background

5.      Whiting Petroleum Corporation ("WLL") and its Debtor affiliates are an independent exploration and production company with an oil focused asset base.  The Debtors' primary production and development activities are located in North Dakota and the Rocky Mountain region, with additional oil and gas properties located in Texas.  The Debtors' assets predominately are mature properties with stable, high-quality, oil-weighted production. Headquartered in Denver, Colorado, the Debtors have approximately 500 employees. The Debtors' operating revenue for the twelve-month period that ended December 31, 2019 was approximately $1.6 billion, and, as of the Petition Date, the Debtors have approximately $3.4 billion in total funded debt obligations.

6.      On April 1, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  On April 10, 2020, the United States Trustee for the

3

Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 127].

### Moelis' Qualifications

7.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis is a leading international investment banking and financial advisory firm (NYSE: MC) with nearly 865 employees in 16 offices around the world.  Moelis provides a broad range of financial advisory services including (a) mergers and acquisitions, (b) recapitalization and restructuring, (c) capital markets advisory, and (d) private funds advisory.

8.      Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies in the energy sector, both out-of-court and in chapter 11 cases, including providing financial and strategic advice to its clients in cases involving Key Energy Services, Sanchez Energy Corporation, EP Energy Corporation, Parker Drilling Company, Pacific Drilling S.A., Seadrill Ltd., Cobalt International Energy, Inc., Breitburn Energy Partners LP, White Oak Resources, Ascent Resources Marcellus Holdings, LLC, Ultra Petroleum Corp., CHC Group Ltd., CJ Holding Co., Energy XXI, Inc., Basic Energy Services, Sandridge Energy, Inc., Seventy Seven Energy Inc., and Templar Energy LLC.

9.      Moelis' business reorganization professionals have served as investment bankers and/or financial advisors in numerous cases, including:  *In re RentPath Holdings, Inc*., Case No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020) [Docket No. 81]; *In re Sanchez Energy Corporation*, Case No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019) [Docket No. 495]; *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019) [Docket No. 369];

*In re Aegean Marine Petr. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019) [Docket No. 394]; *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Nov. 15, 2018); *In re Aralez Pharmaceuticals US Inc.*, Case No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018) [Docket No. 239]; *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018) [Docket No. 1165]; *In re Global A&T Electronics Ltd*, Case No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018) [Docket No. 102]; *In re Toys "R" US, Inc.*, Case No. 17-34665 (KLP) (Bankr. ED. Va. Nov. 21, 2017) [Docket No. 1054]; *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [Docket No. 657]; *In re Basic Energy Services, Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) [Docket No. 170]; *In re UCI International, LLC*, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [Docket No. 289]; *In re AOG Entm't, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [Docket No. 128]; *In re SFX Ent'mt, Inc.*, Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) [Docket No. 265]; *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) [Docket No. 450]; *In re Am. Apparel, Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) [Docket No. 390]; *In re Quicksilver Resources Inc.*, Case No. 15-10585 (LSS) (Bankr. D. Del. May 8, 2015) [Docket No. 332]; *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [Docket No. 201]; *In re ITR Concession Co.*, Case No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014) [Docket No. 180]; *In re MACH Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) [Docket No. 138]; *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) [Docket No. 131]; *In re Cengage Learning, Inc.*, Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) [Docket No. 478]; *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013) [Docket No. 221]; *In re Revel AC, Inc.*, Case No.

5

13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013) [Docket No. 178]; *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) [Docket No. 269]; *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012) [Docket No. 1315]; *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012) [Docket No. 1651].

10.     The Debtors have selected Moelis as their investment banker and financial advisor based upon, among other things:  (a) Moelis' extensive knowledge of the Debtors; (b) the Debtors' need to retain a skilled investment banking and financial advisory firm to provide advice with respect to the Debtors' complex restructuring activities; and (c) Moelis' extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases such as these.  In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities, and experience are crucial to the Debtors' successful restructuring. An experienced investment banker and financial advisor such as Moelis fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals.  For these reasons, the Debtors require the services of a capable and experienced investment banker and financial advisor such as Moelis.

11.     Moelis has been advising the Debtors since February 12, 2020.  Throughout Moelis' engagement, Moelis has provided valuable services to the Debtors in connection with their restructuring efforts, including, among others:  (i) assisting the Debtors in reviewing and analyzing the Debtors' results of operations, liquidity needs, financial condition, and business plans; (ii) assisting the Debtors in reviewing and analyzing the Debtors' strategic and restructuring alternatives and potential capital transactions; (iii) advising and assisting the Debtors in negotiations with current stakeholders over the terms of a number of potential restructuring

25624566v.2 002715/00003

transactions with the goal of reaching a consensual restructuring transaction; and (iv) meeting with the Debtors and the Debtors' stakeholders, as appropriate, to discuss the various proposed restructuring transactions.

12.     As a result of its work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information.  Having worked with the Debtors' management and their other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors, and all parties in interest.

## Services to be Provided

13.     As of February 12, 2020, Moelis commenced its engagement with the Debtors to provide financial advisory and investment banking advice to the Debtors in connection with a potential Restructuring and/or Capital Transaction.  The terms and conditions of the Moelis Engagement Letter were the result of significant discussions and negotiations between Moelis and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Pursuant to the Moelis Engagement Letter, Moelis has and will perform the following services, as requested, for the Debtors:[5]

> (a)     assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition, and business plans;

---

[5]     The summary provided herein is for illustrative purposes only and is subject to the Moelis Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Moelis Engagement Letter, the Moelis Engagement Letter will control.

7

(b)     assist the Debtors in reviewing and analyzing any potential Restructuring or Capital Transaction;

(c)     assist the Debtors in negotiating any potential Restructuring or Capital Transaction;

(d)     advise the Debtors on the terms of securities they offer in any potential Restructuring or Capital Transaction;

(e)     advise the Debtors on, and assist the Debtors in, the preparation of an information memorandum for a potential Capital Transaction (each, an "Information Memo");

(f)     assist the Debtors in contacting potential purchasers of a Capital Transaction that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements that are approved and executed by the Debtors;

(g)     assist the Debtors in contacting debt holders and in discussions and negotiations with such holders in respect of a potential Restructuring, and meet with and provide them with information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements that are approved and executed by the Debtors;

(h)     provide testimony concerning any of the subjects encompassed by the services set forth in Section 1 of the Moelis Engagement Letter; and

(i)     provide such other financial advisory and investment banking services in connection with a Restructuring or Capital Transaction as Moelis and the Debtors may mutually agree upon.

14.     If the Debtors request that Moelis perform services not contemplated by the Moelis Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval thereof.

## **Professional Compensation**

15.     Moelis' decision to advise and assist the Debtors in connection with their chapter 11 cases is subject to its ability to be retained in accordance with the terms of the Moelis Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

8

16.     As set forth more fully in the Moelis Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure"):[6]

(a)     **Monthly Fee**.  During the term of the Moelis Engagement Letter, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month.  Whether or not a Restructuring or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Moelis Engagement Letter.  Commencing with the seventh Monthly Fee, 50% of the Monthly Fees that are paid to Moelis shall be offset against the Restructuring Fee, to the extent paid.

(b)     **Restructuring Fee**.  At the closing of a Restructuring (as defined in the Moelis Engagement Letter), a non-refundable cash fee (the "Restructuring Fee") of $11,500,000.

(c)     **Capital Transaction Fee**.   At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

(i)     4.0% of the aggregate gross amount or face value of capital Raised[7] in the Capital Transaction as equity, equity-linked interests, options, warrants, or other rights to acquire equity interests (including any rights offerings); plus

(ii)     2.0% of the aggregate gross amount of unsecured debt obligations Raised in the Capital Transaction; plus

(iii)     1.0% of the aggregate gross amount of secured debt obligations and other interests Raised in the Capital Transaction (including debtor-in-possession financing).

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.  Fifty percent (50%) of the aggregate amount of any Capital Transaction Fees that are earned and paid to Moelis under the terms of the Moelis Engagement Letter shall be offset against the Restructuring Fee; provided that such credit shall not reduce the Restructuring Fee to less than zero.

---

[6]     The summary provided herein is for illustrative purposes only and is subject to the Moelis Engagement Letter in all respects. In the event of any inconsistency between the Fee Structure as set forth herein and the Moelis Engagement Letter, the Moelis Engagement Letter shall control.

[7]     "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of their obligations.

17.     If, at any time before the end of the Tail Period,[8] the Debtors consummate any Restructuring or Capital Transaction or enter into a definitive agreement or a Plan is filed providing for any Restructuring or Capital Transaction and a Restructuring or Capital Transaction is subsequently consummated, then the Debtors shall pay Moelis the appropriate fee specified in the Moelis Engagement Letter immediately upon the closing of each such Transaction.

18.     As set forth in the Moelis Engagement Letter, more than one fee and more than one type of fee may be payable to Moelis under the Moelis Engagement Letter in connection with any single Transaction or a series of Transactions, and in each case, each such fee will be paid to Moelis.  No fee or compensation payable to any third party by the Debtors or any other person or entity in connection with the subject matter of this engagement will reduce or otherwise affect any fee payable by the Debtors to Moelis under the Moelis Engagement Letter.

19.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Moelis Engagement Letter, including the costs of Moelis' outside counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(c) of the Bankruptcy Code).

20.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "U.S. Trustee Guidelines") established by the United States Trustee for the Southern District of Texas ("U.S. Trustee"), and

---

[8]     The "Tail Period" shall end 12 months following the expiration or termination of the Moelis Engagement Letter.

25624566v.2 002715/00003

any other applicable procedures and orders of the Court, including any order approving this Application and consistent with the proposed compensation set forth in the Moelis Engagement Letter.

21.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  However, because:  (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

22.     The Debtors believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with

the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. The Debtors also believe that the Fee Structure reflects a balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Moelis Engagement Letter. In determining the Fee Structure and the reasonableness of such compensation, the Debtors compared Moelis' fee proposal to comparable precedents. After such comparison, followed by discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to compensate Moelis fairly for its work.

23.     In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final. Such invoices and time records will be subject to approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

24.     Moelis' strategic and financial expertise, as well as its industry expertise, capital markets knowledge, financing skills, and restructuring capabilities, some or all of which have and will be required by the Debtors during the term of Moelis' engagement, were important factors to the Debtors in determining the Fee Structure. The Debtors believe that the ultimate benefits of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Debtors and Moelis agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of Moelis and in light of the fact that (a) such commitment could have and may

12

still foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform the restructuring services may vary substantially from week to week and month to month, creating "peak load" issues for Moelis.

25.     The Debtors paid Moelis $300,000.00 in fees and $4,626.82 for expenses during the 90-day period before the Petition Date.  As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Moelis Engagement Letter in excess of a $10,000 expense advance Moelis is holding on account for prepetition expenses incurred in connection with the Moelis Engagement Letter.

<u>**Indemnification**</u>

26.     As part of the overall compensation payable to Moelis under the terms of the Moelis Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations, as set forth in <u>Annex A</u> to the Moelis Engagement Letter (the "<u>Indemnification Agreement</u>").  As more fully set forth therein, the Indemnification Agreement provides, among other things, that Debtors will indemnify and hold harmless Moelis, its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (each, an "<u>Indemnified Person</u>," and collectively, the "<u>Indemnified Persons</u>") from and against any losses, claims, damages, or liabilities (collectively, "<u>Losses</u>") incurred by an Indemnified Person (A) (i) related to the Debtors' actions or omissions in connection with the Moelis Engagement Letter, or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or its agents in connection with the Moelis Engagement Letter, or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder, except that clause (B) shall not

13

apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Indemnified Person.

27.     The Moelis Engagement Letter's indemnification, contribution, and reimbursement provisions were fully negotiated by the Debtors and Moelis at arm's-length and in good faith, and the Debtors respectfully submit that these indemnification, contribution, and reimbursement provisions of the Moelis Engagement Letter are reasonable, subject to the modifications set forth in the proposed Order.  The Debtors believe that the indemnification and other provisions in the Moelis Engagement Letter are appropriate and reasonable for investment banking and financial advisory engagements both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

### Moelis' Disinterestedness

28.     Moelis has reviewed the list of parties in interest provided by the Debtors listed in **Schedule 1** to the Latif Declaration (the "Potential Parties in Interest"). To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Latif Declaration, Moelis: (a) is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the estates with respect to the matters on which Moelis will be employed; and (c) has no connection to the Debtors, these chapter 11 cases, their creditors, or their related parties except as disclosed on **Schedule 2** of the Latif Declaration.

29.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has

been disclosed in the Latif Declaration.  Moelis will make continued inquiries following the following of this application, on a periodic basis, and will submit additional disclosures to the Court if necessary or otherwise appropriate.

30.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

### No Duplication of Services

31.     By separate applications, the Debtors are also seeking to employ various other restructuring professionals.  The Debtors do not believe that the services to be rendered by Moelis will be duplicative of the services performed by any other professional and Moelis will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.  Specifically, Moelis will fulfill unique investment banking and financial advisory functions that are not expected or intended to be carried out by any other of the Debtors' professionals.

### Basis for Relief

**I.     The Debtors Should be Permitted to Retain and Employ Moelis on the Terms in the Moelis Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

32.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 327(a) of the Bankruptcy Code, in turn,

authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

33.    Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations and emphasis omitted).

34.    The Court's approval of the Debtors' retention of Moelis in accordance with the terms and conditions of the Moelis Engagement Letter is warranted. As discussed above and in the Latif Declaration, Moelis satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.[9] Moelis had been advising the Debtors for a considerable period of time prior

---

[9]    Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code. Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their

16

to the commencement of these chapter 11 cases and has already committed a significant amount of time and effort assisting the Debtors with their efforts to reach a consensual deal with their creditors and preparing the Debtors for their chapter 11 filing.  Moelis is needed postpetition to continue to assist with negotiations, as necessary, to provide expert advice, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  Moelis has extensive experience and an excellent reputation in providing high-quality investment banking and financial advisory services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  Moelis has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts.  The Debtors believe that Moelis is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.  Furthermore, as detailed above, Moelis does not hold or represent an interest materially adverse to the estate and is disinterested.

35.     In addition, the Debtors believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects Moelis' commitment to the variable level of time and effort necessary to perform the restructuring services, Moelis' particular expertise, and the market prices for Moelis' services for engagements of this nature both out of court and in a chapter 11 context.  Indeed, the Debtors believe that the Fee Structure appropriately reflects:  (a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with respect to investment banking and

---

respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above. 11 Fed. R. Bankr. P. 2014. Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Latif Declaration attached hereto.

25624566v.2 002715/00003

financial advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

36.     Also, notwithstanding the foregoing, under the Order, the U.S. Trustee will retain all rights to object to Moelis' fee applications (including expense reimbursements) pursuant to section 330 of the Bankruptcy Code.

37.     As set forth above, notwithstanding approval of the Moelis Engagement Letter under section 328(a) of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the Bankruptcy Code and any compensation procedures approved by the Court.  Additionally, the Debtors request that the requirements of the Bankruptcy Local Rule 2016-1 and the U.S. Trustee Guidelines be tailored to appropriately reflect Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate basis.  As discussed above, Moelis' restructuring personnel will keep summary time records in one hour increments describing their daily activities and the identity of persons who performed such tasks. Apart from the time recording practices described above, however, Moelis' restructuring personnel do not maintain their time records on a "project category" basis.  As such, the Debtors request modification of the requirements of the Bankruptcy Local Rules, the U.S. Trustee Guidelines, and any other orders and procedures of this Court.

38.     Courts in this jurisdiction have approved relief similar to the relief requested in this application, including similar fixed and contingency fee arrangements and with modified time-keeping requirements.  *See, e.g.*, *In re Sanchez Energy Corporation*, Case No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Parker Drilling Company*, Case No. 18-36958 (MI)

(Bankr. S.D. Tex. Jan. 15, 2019); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Ameriforge Grp. Inc.*, Case No. 17-32660 (DRJ) (Bankr. S.D. Tex. June 16, 2017); *In re Ultra Petroleum Corp., et al.*, Case No. 16 32202 (MI) (Bankr. S.D. Tex. July 20, 2016); *In re Energy XXI LTD, et al.*, Case No. 16-31928 (Bankr. S.D. Tex. July 1, 2016).[10]

## II. The Indemnification, Contribution, and Reimbursement Terms of the Moelis Engagement Letter are Appropriate.

39.     The indemnification, contribution and reimbursement provisions in the Moelis Engagement Letter, as modified by the Order, were fully negotiated between the Debtors and Moelis.   The Debtors and Moelis believe that the indemnification provisions in the Moelis Engagement Letter are customary and reasonable for investment banking and financial advisory engagements both out of court and in chapter 11 cases.   The Debtors are seeking approval of the modified indemnification provisions consistent with other orders of the Court.   Such terms of indemnification reflect those that are customary in this and other jurisdictions and are in substantially the same form as terms that have been approved by this Court in other recent cases. *See, e.g.*, *In re Sanchez Energy Corporation*, Case No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Parker Drilling Company*, Case No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Ameriforge Grp. Inc.*, Case No. 17-32660 (DRJ) (Bankr. S.D. Tex. June 16, 2017); *In re Ultra Petroleum Corp., et al.*, Case No. 16-32202 (MI) (Bankr. S.D. Tex. July 20, 2016); *In re Energy XXI LTD, et al.*, Case No. 16-31928 (Bankr. S.D. Tex. July 1, 2016); *In re Cumulus Media Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*,

---

[10]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

Case No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015).[11]

40.    Accordingly, the Debtors respectfully submit that the terms of the modified indemnification provisions are reasonable and customary and should be approved in these chapter 11 cases.

### III.    The Retention of Moelis Is Critical to these Cases.

41.    The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these chapter 11 cases.  Moelis is a preeminent investment banking firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking professionals and financial advisors who have served them since February 12, 2020, and have advised the Debtors with respect to potential restructuring alternatives.  Indeed, if the Debtors were forced to engage a new investment banker and financial advisor who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Moelis' extensive engagement, such change would mandate the commitment of significant resources to educate a replacement.  As discussed above, based on services performed to date, Moelis has been integral to preparing the Debtors for these chapter 11 cases.

42.    In light of the foregoing, the Debtors submit that the retention of Moelis is in the best interest of the estates, their creditors, and all parties in interest in these chapter 11 cases. Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors

---

[11]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

and creditor constituencies throughout the United States. The Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Moelis Engagement Letter.

## **Reservation of Rights**

43.     Nothing contained herein is intended or should be construed as: (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay a prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or denied in this application or any order granting the relief requested by this Application; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## **Notice**

44.     The Debtors will provide notice of this motion to the following parties or their counsel:  (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility; (d) the lenders under the Debtors' prepetition revolving credit facility; (e) the indenture trustee for the Debtors' unsecured notes; (f) the ad hoc group of senior noteholders; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) the state attorneys general for states in which the Debtors

21

conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, granting the relief requested in this Application and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
April 17, 2020

Respectfully Submitted,

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Brian Schartz, P.C. (TX Bar No. 24099361) |
| Veronica A. Polnick (TX Bar No. 24079148) | Anna Rotman, P.C. (TX Bar No. 24046761) |
| 1401 McKinney Street, Suite 1900 | 609 Main Street |
| Houston, Texas 77010 | Houston, Texas 77002 |
| Telephone: (713) 752-4200 | Telephone: (713) 836-3600 |
| Facsimile: (713) 752-4221 | Facsimile: (713) 836-3601 |
| Email: mcavenaugh@jw.com | Email: brian.schartz@kirkland.com |
|   jwertz@jw.com |   anna.rotman@kirkland.com |
|   vpolnick@jw.com | |

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

-and-

Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          gregory.pesce@kirkland.com

-and-

Stephen Hessler, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          stephen.hessler@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in*
*Possession*

**<u>Certificate of Service</u>**

I certify that on April 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## **EXHIBIT A**

**Latif Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) | Case No. 20-32021 (DRJ) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**DECLARATION OF BASSAM J. LATIF IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF MOELIS & COMPANY LLC**
**AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE**
**DEBTORS, EFFECTIVE AS OF APRIL 1, 2020, (II) WAIVING CERTAIN**
**TIME-KEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF**

I, Bassam J. Latif, being duly sworn, state the following under penalty of perjury:

1.      I am a Managing Director of Moelis & Company LLC ("Moelis") residing in Moelis' Houston office, located at 1200 Smith Street, 19th Floor, Houston, TX 77002. I am duly authorized to make this declaration (the "Declaration") on behalf of Moelis and submit this Declaration in accordance with sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with the application (the "Application") of the above-captioned debtors (collectively, the "Debtors"), seeking an order approving the retention of Moelis as investment banker and financial advisor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and effective as of the Petition Date. The facts set forth

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

in this Declaration are based on my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of Moelis under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

<u>**Moelis' Qualifications**</u>

2.      I believe that Moelis and the professionals it employs are uniquely qualified to advise the Debtors in the matters for which Moelis is proposed to be employed.

3.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis is a leading international investment banking and financial advisory firm (NYSE: MC) with nearly 865 employees offices 16 around the world.  Moelis provides a broad range of financial advisory services including (a) mergers and acquisitions, (b) recapitalization and restructuring, (c) capital markets advisory, and (d) private funds advisory.

4.      Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies in the energy sector, both out-of-court and in chapter 11 cases, including providing financial and strategic advice to its clients in cases involving Key Energy Services, Sanchez Energy Corporation, EP Energy Corporation, Parker Drilling Company, Pacific Drilling S.A., Seadrill Ltd., Cobalt International Energy, Inc., Breitburn Energy Partners LP, White Oak Resources, Ascent Resources Marcellus Holdings, LLC, Ultra Petroleum Corp., CHC Group Ltd., CJ Holding Co., Energy XXI, Inc., Basic Energy Services, Sandridge Energy, Inc., Seventy Seven Energy Inc., and Templar Energy LLC.

2

5.      Moelis' business reorganization professionals have served as investment bankers and/or financial advisors in numerous cases, including: *In re RentPath Holdings, Inc*., Case No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020) [Docket No. 81]; *In re Sanchez Energy Corporation*, Case No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019) [Docket No. 495]; *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019) [Docket No. 369]; *In re Aegean Marine Petr. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019) [Docket No. 394]; *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Nov. 15, 2018); *In re Aralez Pharmaceuticals US Inc.*, Case No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018) [Docket No. 239]; *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018) [Docket No. 1165]; *In re Global A&T Electronics Ltd*, Case No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018) [Docket No. 102]; *In re Toys "R" US, Inc.*, Case No. 17-34665 (KLP) (Bankr. ED. Va. Nov. 21, 2017) [Docket No. 1054]; *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [Docket No. 657]; *In re Basic Energy Services, Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) [Docket No. 170]; *In re UCI International, LLC*, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [Docket No. 289]; *In re AOG Entm't, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [Docket No. 128]; *In re SFX Ent'mt, Inc.*, Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) [Docket No. 265]; *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) [Docket No. 450]; *In re Am. Apparel, Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) [Docket No. 390]; *In re Quicksilver Resources Inc.*, Case No. 15-10585 (LSS) (Bankr. D. Del. May 8, 2015) [Docket No. 332]; *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [Docket No. 201]; *In re ITR Concession Co.*, Case No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014) [Docket No. 180]; *In re MACH Gen, LLC*, Case No. 14-

10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) [Docket No. 138]; *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) [Docket No. 131]; *In re Cengage Learning, Inc.*, Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) [Docket No. 478]; *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013) [Docket No. 221]; *In re Revel AC, Inc.*, Case No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013) [Docket No. 178]; *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) [Docket No. 269]; *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012) [Docket No. 1315]; *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012) [Docket No. 1651].

6.      I understand that the Debtors have selected Moelis as their investment banker and financial advisor based upon, among other things:  (a) Moelis' extensive knowledge of the Debtors; (b) the Debtors' need to retain a skilled investment banking and financial advisory firm to provide advice with respect to the Debtors' complex restructuring activities; and (c) Moelis' extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases such as these.  In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities, and experience are crucial to the Debtors' successful restructuring.  An experienced investment banker and financial advisor such as Moelis fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals.

7.      Moelis has been advising the Debtors since February 12, 2020.  Throughout Moelis' engagement, Moelis has provided valuable services to Debtors in connection their restructuring activities, including, among others:  (a) assisting the Debtors in reviewing and analyzing the Debtors' results of operations, liquidity needs, financial condition, and business

4

plans; (b) assisting the Debtors in reviewing and analyzing the Debtors' strategic and restructuring alternatives and potential capital transactions; (c) advising and assisting the Debtors in negotiations with current stakeholders over the terms of a number of potential restructuring transactions with the goal of reaching a consensual restructuring transaction; and (d) meeting with the Debtors and the Debtors' stakeholders, as appropriate, to discuss the various proposed restructuring transactions.

8.      As a result of its work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information.   Having worked with the Debtors' management and their other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.   Accordingly, I believe Moelis is well-qualified to represent the Debtors in a cost-effective, efficient, and timely manner.

### Scope of Services

9.      The terms and conditions of the Moelis Engagement Letter were the result of significant discussions and negotiations between Moelis and the Debtors. Subject to approval of the Court and consistent with the Moelis Engagement Letter, Moelis will advise and assist the Debtors in connection with the following tasks:[2]

(a)      assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition, and business plans;

(b)      assist the Debtors in reviewing and analyzing any potential Restructuring or Capital Transaction;

---

[2]   The summary provided herein is for illustrative purposes only and is subject to the Moelis Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Moelis Engagement Letter, the Moelis Engagement Letter will control.

(c)     assist the Debtors in negotiating any potential Restructuring or Capital Transaction;

(d)     advise the Debtors on the terms of securities they offer in any potential Restructuring or Capital Transaction;

(e)     advise the Debtors on, and assist the Debtors in, the preparation of an information memorandum for a potential Capital Transaction (each, an "<u>Information Memo</u>");

(f)     assist the Debtors in contacting potential purchasers of a Capital Transaction that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements that are approved and executed by the Debtors;

(g)     assist the Debtors in contacting debt holders and in discussions and negotiations with such holders in respect of a potential Restructuring, and meet with and provide them with information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements that are approved and executed by the Debtors;

(h)     provide testimony concerning any of the subjects encompassed by the services set forth in Section 1 of the Moelis Engagement Letter; and

(i)     provide such other financial advisory and investment banking services in connection with a Restructuring or Capital Transaction as Moelis and the Debtors may mutually agree upon.

10.     I believe these professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code. Further, if the Debtors request that Moelis perform services not contemplated by the Moelis Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval.  I believe that the employment of Moelis is important to enabling the Debtors to execute their duties as debtors in possession and to effectuate their reorganization efforts.

25624566v.2 002715/00003

**Professional Compensation**

11.     Moelis' decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices.

12.     Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Moelis Engagement Letter follows this custom in the financial advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

13.     As set forth more fully in the Moelis Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure"):[3]

> (a)     **Monthly Fee**.  During the term of the Moelis Engagement Letter, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. Whether or not a Restructuring or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Moelis Engagement Letter. Commencing with the seventh Monthly Fee, 50% of the Monthly Fees that are paid to Moelis shall be offset against the Restructuring Fee, to the extent paid.
>
> (b)     **Restructuring Fee**.  At the closing of a Restructuring (as defined in the Moelis Engagement Letter), a non-refundable cash fee (the "Restructuring Fee") of $11,500,000.
>
> (c)     **Capital Transaction Fee**.  At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

---

[3]     The summary provided herein is for illustrative purposes only and is subject to the Moelis Engagement Letter in all respects. In the event of any inconsistency between the Fee Structure as set forth herein and the Moelis Engagement Letter, the Moelis Engagement Letter shall control.

(i)  4.0% of the aggregate gross amount or face value of capital Raised[4] in the Capital Transaction as equity, equity-linked interests, options, warrants, or other rights to acquire equity interests (including any rights offerings); plus

(ii)  2.0% of the aggregate gross amount of unsecured debt obligations Raised in the Capital Transaction; plus

(iii)  1.0% of the aggregate gross amount of secured debt obligations and other interests Raised in the Capital Transaction (including debtor-in-possession financing).

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. Fifty percent (50%) of the aggregate amount of any Capital Transaction Fees that are earned and paid to Moelis under the terms of the Moelis Engagement Letter shall be offset against the Restructuring Fee; provided that such credit shall not reduce the Restructuring Fee to less than zero.

14.     If, at any time before the end of the Tail Period,[5] the Debtors consummate any Restructuring or Capital Transaction or enter into a definitive agreement or a Plan is filed providing for any Restructuring or Capital Transaction and a Restructuring or Capital Transaction is subsequently consummated, then the Debtors shall pay Moelis the appropriate fee specified in the Moelis Engagement Letter immediately upon the closing of each such Transaction.

15.     As set forth in the Moelis Engagement Letter, more than one fee and more than one type of fee may be payable to Moelis under the Moelis Engagement Letter in connection with any single Transaction or a series of Transactions, and in each case, each such fee will be paid to Moelis. No fee or compensation payable to any third party by the Debtors or any other person or entity in connection with the subject matter of this engagement will reduce or otherwise affect any fee payable by the Debtors to Moelis under the Moelis Engagement Letter.

---

[4]   "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of their obligations.

[5]   The "Tail Period" shall end 12 months following the expiration or termination of the Moelis Engagement Letter.

8

16.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Moelis Engagement Letter, including the costs of Moelis' outside counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(c) of the Bankruptcy Code).

17.     During the pendency of these chapter 11 cases, Moelis shall apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived and/or modified) and consistent with the proposed compensation set forth in the Moelis Engagement Letter.

18.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  However, because:  (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals

not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

19.     In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Such invoices and time records will be subject to approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

20.     I believe that the Fee Structure is consistent with, and appropriately reflects the nature of, the services to be provided by Moelis and the fee structures typically utilized by leading investment banking firms of similar stature to Moelis for comparable engagements, both in and out of court.  I believe that the Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  I also believe that the Fee Structure creates a proper balance between fixed monthly fees and contingency fees, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Moelis Engagement

Letter.  After discussions and arm's length negotiations with the Debtors, I believe that the Fee Structure is reasonable, market-based, and designed to compensate Moelis fairly for its work.

21.     I understand that Moelis' strategic and financial expertise, as well as its industry expertise, capital markets knowledge, financing skills, and restructuring capabilities, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were important factors to the Debtors in determining the Fee Structure.  I believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.  The Debtors and Moelis agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of Moelis and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform the restructuring services may vary substantially from week to week and month to month, creating "peak load" issues for Moelis.

22.     The Debtors paid Moelis $300,000.00 in fees and $4,626.82 for expenses during the 90-day period before the Petition Date.  As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Moelis Engagement Letter in excess of a $10,000.00 expense advance Moelis is holding on account for prepetition expenses incurred in connection with the Moelis Engagement Letter.

**Indemnification**

23.     As part of the overall compensation payable to Moelis under the terms of the Moelis Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations, as set forth in **Annex A** to the Moelis Engagement Letter (the "Indemnification Agreement").  As more fully set forth therein, the Indemnification Agreement provides, among other things, that Debtors will indemnify and hold harmless Moelis,

11

its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (each, an "Indemnified Person," and collectively, the "Indemnified Persons") from and against any losses, claims, damages, or liabilities (collectively, "Losses") incurred by an Indemnified Person (A) (i) related to the Debtors' actions or omissions in connection with the Moelis Engagement Letter, or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or its agents in connection with the Moelis Engagement Letter, or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Indemnified Person.

24.     I believe that the indemnification, contribution, and reimbursement provisions reflected in the Moelis Engagement Letter are customary and reasonable terms of consideration for financial advisors and investment bankers such as Moelis for proceedings both out-of-court and in chapter 11.  The terms of the Moelis Engagement Letter, including the Indemnification Agreement, were fully negotiated between the Debtors and Moelis at arm's length.

### No Duplication of Services

25.     I believe that the services to be rendered by Moelis will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, Moelis will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

**Moelis' Disinterestedness**

26.     Moelis has undertaken to determine whether it has any conflicts or other relationships that might cause it not to be eligible for employment by the Debtors in these cases. Specifically, Moelis obtained from the Debtors the names of individuals and entities that may be parties in interest in these cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the Potential Parties in Interest listed on **Schedule 1** attached hereto; and (b) issued a general inquiry to certain of its officers with respect to the Debtors and certain Potential Parties in Interest.

27.     Based on the foregoing inquiry, other than in connection with this engagement and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of which I am aware.  In particular, to the best of my knowledge, information, and belief, neither I, Moelis, nor any of its professionals:

> a.     is a creditor, equity security holder, or insider of the Debtors;
>
> b.     is or has been within two years before the Petition Date, a director, officer, or employee of the Debtors; or
>
> c.     has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

28.     Neither I nor any of the Moelis professionals who will provide services for the Debtors is related to any Judge of this Court, the U.S. Trustee, or Assistant U.S. Trustee, or any of the U.S. Trustee's trial attorneys in this District, or the U.S. Trustee trial attorney assigned to these chapter 11 cases.

13

29.     To the extent that I have been able to ascertain to date that Moelis has been engaged within the last two years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.  **Schedule 2** also sets forth certain other relationships Moelis has with certain Potential Parties in Interest.  In addition to the facts disclosed on **Schedule 2**, Moelis may in the future be engaged by parties that are or may become parties in interest in these cases.  As these cases progress, new parties may become parties in interest in these cases and similarly, Moelis may have been engaged, may be currently engaged and may in the future be engaged by such new parties in interest in matters unrelated to these chapter 11 cases.  Also, Moelis may have engaged or had mutual clients with, may have a current engagement or have mutual clients with and may in the future engage or have mutual clients with certain law firms, financial advisors, accounting firms, and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to these cases.  In addition, Moelis may have also been engaged by, be currently engaged by, or in the future be engaged by persons who are creditors or shareholders of, otherwise have a business relationship with the Debtors, or who are competitors of or customers of the Debtors.  Potential Parties in Interest, persons that may become parties in interest in these cases, and persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors, may be:  (a) parties in interest in other bankruptcy cases where Moelis is acting as financial advisor or investment banker to the debtors or to other parties in interest; or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged or may in the future be engaged by.  In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these chapter 11 cases.

30.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest or persons who otherwise have relationships with parties in interest.  Moreover, Moelis' employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors.  Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

31.     Moelis Asset Management is an asset management holding company which holds interests in various funds, including private equity, credit investments, direct lending and collateralized loan obligations funds.  These funds may hold investment positions in various entities from time-to-time, some of which may be parties in interest in these chapter 11 cases. Moelis Asset Management and its subsidiaries are operated in separate legal and operating entities from Moelis.  Moelis and Moelis Asset Management and its subsidiaries are separated by a compliance information barrier that prevents (a) a Moelis employee from disclosing non-public information concerning the Debtors or these cases to any employee of Moelis Asset Management or its subsidiaries, and (b) an employee of Moelis Asset Management or its subsidiaries from disclosing non-public information concerning an investment of Moelis Asset Management or its subsidiaries to a Moelis employee.  No employees of Moelis Asset Management and its subsidiaries will work on these cases, and Moelis employees working on these cases have no

15

involvement in the investment decisions of Moelis Asset Management or its subsidiaries. Based on the business separation and compliance information barriers referred to above, I do not believe that the investment activities of Moelis Asset Management or its subsidiaries constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

32.     To the best of my knowledge, information, and belief, some of Moelis' present and future employees may have, or may in the future have, personal investments in funds, or other investment vehicles, over whose investment decisions such employees have no input or control. Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors, or other parties in interest in these chapter 11 cases.

33.     Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code. In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking and financial advisory services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, one such senior advisor may be assigned to assist the other Moelis professionals for such engagement. Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment. The fees and expenses of such senior advisor are paid solely by Moelis. The Debtors submit that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

*[Signature page follows.]*

16

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 17, 2020.

/s/ *Bassam J. Latif*
Name: Bassam J. Latif

## Schedule 1

**Potential Parties in Interest**

**Debtors**

Whiting Canadian Holding Company ULC
Whiting Oil and Gas Corporation
Whiting Petroleum Corporation
Whiting Resources Corporation
Whiting US Holding Company

**Non-Debtor Affiliates - JV**

Headlee Gas Plant Tax Partnership
Oklahoma Gas Tax Partnership
Raven Ridge Pipeline Company
Sakakawea Area Spill Response, LLC
Shaw Resources Limited, LLC
Sustainable Water Resources, LLC
Whiting Programs, Inc.
Whiting USA Trust II

**Directors/Officers**

Bradley J. Holly
Bruce R. DeBoer
Carin S. Knickel
Charles J. Rimer
Correne S. Loeffler
James E. Catlin
Jeffrey S. Stein
Lyne B. Andrich
Michael B. Walen
Michael G. Hutchinson
Michael J. Stevens
Philip E. Doty
Sirikka R. Lohoefener
Thomas L. Aller
Timothy M. Sulser
William (Bill) N. Hahne

**5% or More Equity Holders**

Black Rock, Inc.
Dimensional Fund Advisors LP
FMR LLC
Hotchkis and Wiley Capital Management, LLC
State Street Corporation - SSGA Funds Management, Inc.
The Vanguard Group

**Bankruptcy Professionals**

Evercore Inc.
Jackson Walker LLP
Kirkland & Ellis, LLP
Alvarez & Marsal North America, LLC
Opportune LLP
Paul, Weiss, Rifkind, Wharton & Garrison LLP
PJT Partners
Simpson Thatcher Bartlett
Stein Advisors, LLC
Stretto

**Bankruptcy Judges**

David R. Jones
Marvin Isgur

**Banks/Lender/UCC Lien Parties/Administrative Agents**

ABN AMRO Capital USA LLC
Bank of America, N.A.
BOKF, NA d/b/a Bank of Oklahoma
Branch Banking and Trust Company
Canadian Imperial Bank of Commerce
Capital One, National Association
Citibank, N.A.
Comercia Bank
Compass Bank
Fifth Third Bank
ING Capital LLC
JPMorgan Chase Bank, N.A.
Keybank National Association
Merill Lynch Commodities, Inc.
Regions Bank
Royal Bank of Canada
Sumitomo Mitsui Banking Corporation
SunTrust Bank
The Bank of Nova Scotia
U.S. Bank National Association
Wells Fargo Bank, National Association

**Bondholders/Indenture Trustee**

AllianceBernstein LP
Allianz Global Investors US LLC

BlackRock Investment Management
Capstone Investment Advisors LLC
Ensign Peak Advisors
Hudson Bay Capital Management LP
JP Morgan Asset Management
Loomis, Sayles & Company LP
Robeco Institutional Asset Management
The Bank of New York Mellon Trust Company, N.A.
Wellington Management Company LLP
Wells Fargo Securities

**Contract Counterparties**

BNN WESTERN, LLC
BP ENERGY COMPANY
MEADOWLARK MIDSTREAM COMPANY, LLC DBA BEAR TRACKER ENERGY, LLC
PLAINS PIPELINE, L.P.
QEP FIELD SERVICES, LLC
SHELL TRADING (US) COMPANY
TALLGRASS MIDSTREAM, LLC
TALLGRASS OPERATIONS, LLC
TARGA BADLANDS LLC DBA SADDLE BUTTE PIPELINE, LLC
Trailblazer Pipeline Company
UNITED ENERGY TRADING, LLC

**Governmental/Regulatory Agencies**

Bureau of Safety and Environmental Enforcement ("BSEE")
Colorado Department of Revenue
Comptroller of Public Accounts (TX)
Mississippi Department of Revenue
Mississippi State Oil & Gas Board
Montana Department of Revenue
North Dakota Tax Commissioner
Office of Natural Resources Revenue (ONRR)
State of New Mexico Taxation & Revenue Department
State of Wyoming Department of Revenue & Taxation
Utah State Tax Commission
Weld County Oil and Gas Energy Department
Weld County Treasurer

**Insurance**

Ace American Insurance Company (Chubb)
Ascot Placement
Berkley Insurance Company

Endurance American Insurance Company (Sompo)
Federal Insurance Company (Chubb)
Gotham Insurance Company
Great American Insurance Company
Ironshore Specialty Insurance Company
Liberty Mutual Fire Insurance Co. (Liberty Mutual Group)
Old Republic Insurance Company
QBE International Markets
St Paul Fire & Marine Insurance Co. (Travelers)
StarStone Specialty Insurance Company
Syndicate TRV 5000 at Lloyd's
The IMA Financial Group, Inc.
Twin City Fire Insurance Company (Hartford)
U.S. Specialty Insurance Company
Underwriters at Lloyd's London & Companies
Validus Specialty Insurance on behalf of Lloyds syndicate 1183
XL Specialty Insurance Company
Zurich American Insurance Company

**Landlords**

BCSP DENVER PROPERTY LLC

**Ordinary Course Professionals**

DELOITTE & TOUCHE LLP
KPMG US LLP

**Other Significant Creditors**

Bank of New York Mellon Trust (WHZ)
BIA
BLM-Wyoming
BUREAU OF INDIAN AFFAIRS
Chevron USA
CO State Board of Land Commissioners
Colorado OGCC
COLORADO STATE BOARD OF LAND COMMISSIONERS
Computershare, Inc.
Enbridge Pipelines
HUTCHERSON FAMILY LIMITED PARTNERSHIP AND CLAUDE HUTCHERSON
FAMILY LLC
Industrial Commission of North Dakota
JPMORGAN CHASE BANK, N.A.
Michigan Dept. of Environmental Quality

Michigan Dept. of Natural Resources
ND OIL AND GAS DIVISION
North Dakota Industrial Commission
North Dakota Oil and Gas Division
RAILROAD COMMISSION OF TEXAS, OIL & GAS DIV.
RLI INSURANCE COMPANY
Southern Pipe Electric Power Association
State of Colorado
State of Mississippi
STATE OF MONTANA, OIL AND GAS BOARD
State of New Mexico
State of New Mexico Public Lands
State of North Dakota
State of Oklahoma
STATE OF WYOMING, OIL & GAS CONSERVATION COMM.
State of Wyoming, Trust Lands
Trailblazer Pipeline Company LLC
TX Railroad Commission
TX RR Commission
US/BLM
US/EPA
Weld County, CO
WY Office of State Lands
WY OGCC

**<u>Litigation</u>**

Apache Louisiana Minerals LLC
Arlen A. Dean, et al.
Bepco, L.P.
Bruce Higgins
CapitalPlus Construction Services, LLC
Chad Chandler
Charles D. Wilkinson
EOG Resources, Inc.
Equinor Texas Onshore Properties, LLC
Garth L. Harmon
Izetta Hopkins
Jamex Marketing, LLC
Jesse Moore
Jolene Burr
Mark Bowen
Maynard Lund
Pioneer Drilling Services, LTD
Robert Finley
Ronald Rabbithead

The City of New Orleans
The Parish of Cameron
Wilbur D. Wilkinson
William A. Blackwell
Windsor Bakken, LLC
WOGC
XTO Energy, Inc.

**<u>Royalty Interest Holder</u>**

DORCHESTER MINERALS
EQUINOR ENERGY LP
IRISH OIL & GAS
NANTASKET PETROLEUM CORPORATION
POLSON FAMILY MINERAL TRUST
ZAVANNA LLC

**<u>Significant Competitors</u>**

Abraxas
Bonanza Creek
Denbury
Gulfport Energy
Halcon Resources
Jones Energy
Newfield
Northern Oil & Gas Inc.
Oasis Petroleum
Triangle Petroleum Corporation

**<u>Top 30 Creditors</u>**

Atlas Oil Company
Baker Hughes
Black Hawk Energy Services Ltd
BNN Redtail, LLC
Chemoil Corporation
Chevron USA Inc
CS Welding, LLC
CTAP, LLC
Estvold Oilfield Services Inc
Halliburton Energy Services Inc
Jamex Marketing, LLC
Jmac Resources Inc
Key Energy Services LLC
McKenzie Energy Partners LLC

National Oilwell Varco LP
NexTier Completion Solutions, Inc.
Northern Oilfield Services, LLC
Perfx Wireline Services LLC
Pioneer Drilling Services Ltd
Polar Midstream
Purity Oilfield Services LLC
Rusco Operating LLC
Schlumberger Technology Corporation
Sun Well Service Inc
Targa Resources Partners LP
The Bank of New York Mellon Trust Company, N.A.
Triangle Electric Inc

**U.S. Trustee Office**

Barbara Griffin
Christine March
Christy Simmons
Clarissa Waxton
Diane Livingstone
Glenn Otto
Gwen Smith
Hector Duran
Jacqueline Boykin
Linda Motton
Luci Johnson-Davis
Patricia Schmidt
Stephen Statham

**Utilities**

BIG HORN RURAL ELECTRIC
DAKOTA CARRIER NETWORK
HIGH WEST ENERGY INC
LEA COUNTY ELECTRIC COOP INC
LOWER YELLOWSTONE RURAL
LYNTEGAR ELECTRIC COOP INC.
MCKENZIE ELECTRIC COOPERATIVE
MORGAN COUNTY RURAL ELECTRIC
MOUNTRAIL-WILLIAMS ELECTRIC
POWDER RIVER ENERGY
ROUGHRIDER ELECTRIC COOP INC
SOUTHERN PINE ELECTRIC POWER
TXU ENERGY
VERIZON WIRELESS
XCEL ENERGY

**Vendors**

NORTH DAKOTA TAX COMMISSIONER
THE BANK OF NEW YORK MELLON
SCHLUMBERGER TECHNOLOGY
HALLIBURTON ENERGY SERVICES
OASIS PETROLEUM NA LLC
PREMIER PIPE LLC
POLAR MIDSTREAM
NORTH DAKOTA STATE
COLORADO TUBULARS COMPANY
TARGA RESOURCES PARTNERS LP
GRANITE PEAK ENERGY SERVICES
BNN REDTAIL LLC
EOG RESOURCES INC
OFFICE OF NATURAL RESOURCES
BAKER HUGHES
PATTERSON UTI DRILLING CO LP
MOUNTRAIL-WILLIAMS ELECTRIC
PIONEER DRILLING SERVICES LTD
HILAND CRUDE LLC
WEATHERFORD ARTIFICIAL LIFT
NATIONAL OILWELL VARCO LP
CASEDHOLE SOLUTIONS
MERITAIN HEALTH INC
WEST DAKOTA WATER LLC
ATLAS OIL CO
DNOW LP
MCKENZIE ENERGY PARTNERS LLC
SUN WELL SERVICE INC
LOCHEND ENERGY SERVICES INC
JP MORGAN CHASE BANK, N.A.
CS WELDING LLC
ANDEAVOR FIELD SERVICES LLC
G STYLE TRANSPORT LLC
GOODNIGHT MIDSTREAM
NATIONAL OILWELL VARCO LP
TRIANGLE ELECTRIC INC
STEFFES SOLUTIONS LLC
YSTAAS ELECTRICAL SERVICE LLC
ESTVOLD OILFIELD SERVICES INC
NORTHERN OILFIELD SERVICES LLC
SENTRY CRANE SERVICES
COLORADO DEPARTMENT OF REVENUE
UNIT DRILLING COMPANY

NOVA ENERGY LLC
SINCLAIR OIL & GAS CO
RIMROCK OIL & GAS WILLISTON
PERFX WIRELINE SERVICES LLC
WEATHERFORD US LP
ND ENERGY SERVICES
WELD COUNTY GOVERNMENT
BIG ROY TRUCKING INC
EQUINOR ENERGY LP
GO WIRELINE LLC
BJ SERVICES LLC
LUFKIN INDUSTRIES LLC
EMPIRE OIL COMPANY
HIGH WEST ENERGY INC
SLAWSON EXPLORATION CO INC
BADLANDS POWER FUELS LLC
KEY ENERGY SERVICES LLC
CHEVRON USA INC
CAMERON SURFACE SYSTEMS
MCKENZIE ELECTRIC COOPERATIVE
KRH INC
ELEMENT FLEET
LEGEND ENERGY SERVICES LLC
ROLFSON OIL LLC
LUND OIL INC
WELLPRO INC
CONTINENTAL RESOURCES INC
EAGLE OILFIELD RENTALS LLC
WEST RIVER PUMPS INC
NALCO CHAMPION
HESS BAKKEN INVESTMENTS II LLC
PILOT THOMAS LOGISTICS LLC
IMA OF COLORADO INC
WOLLA TRUCKING LLC
BURLINGTON RESOURCES
NINE POINT ENERGY LLC
CHEMOIL CORP
NOBLE CASING INC
MONTANA DEPT OF REVENUE
E & M SERVICES LLC
FOLLMAN CONSULTING
SIVALLS INC
TROTTER CONSTRUCTION INC
J CUSTOM ELECTRIC
FRANZ CONSTRUCTION INC
BRIDGER ENERGY LLC

HALL TRUCKING INC
BNN NORTH DAKOTA LLC
HESS SERVICES INC
F & D OILFIELD MAINTENANCE INC
PLAINS PIPELINE LP
BALANCED ENERGY OILFIELD
APEX REMINGTON PIPE & SUPPLY
CVH TRUCKING
EARLS ELECTRIC INC
SCHLEGEL TRUCKING LLC
CRUZ ENERGY SERVICES LLC
TIGER WELL SERVICE LLP
ARTIS HRA 1700 BROADWAY LP
BAKERSFIELD PIPE & SUPPLY INC
M-I LLC
COLTER ENERGY SERVICES USA INC
ROUGHRIDER ELECTRIC COOP INC
WILDCAT TRUCKING LLC
SAVANNA WELL SERVICING CORP
HI-LINE TRUCKING INC
MBI ENERGY SERVICES
FREEPORT-MCMORAN OIL & GAS LLC
M & E TRUCKING LLC
BOS SOLUTIONS INC
BLACK HAWK ENERGY SERVICES LTD
NORRIS
JAMES OIL WELL SERVICE INC
ION FIELD SERVICES LLC
YOUNGQUIST BROTHERS OIL & GAS
EDI Q2 ALS LLC
TALLGRASS MIDSTREAM LLC
BRAUN TRUCKING INC
MULTI-CHEM GROUP LLC
QUESTOR SOLUTIONS & TECHNOLOGY
LEGACY TOOL & RENTAL LLC
TRUENORTH STEEL
POWER SOLUTIONS LLC
RIVIERA FINANCE OF TEXAS INC
SUPER HEATERS OF NORTH DAKOTA
COLDSTREAM ENERGY LLC
CROWELL TRUCKING LLC
B.O.S. ROUSTABOUT & BACKHOE
JMAC RESOURCES INC
PATRIOT WELL SOLUTIONS LLC
KLX ENERGY SERVICES LLC
POWER SERVICE INC

NESET CONSULTING SERVICE INC
DOUBLE EE SERVICE INC
OIL STATES ENERGY SERVICES LLC
CANARY PRODUCTION SVCS LLC
BADLANDS CONSULTING LLC
WILLIAMS COUNTY ABSTRACT
UNITED VISION LOGISTICS
NEWFIELD PRODUCTION COMPANY
STICKMAN INC
NORTHERN STATES FISHING TOOL
RIVIERA FINANCE
ALTITUDE ENERGY PARTNERS LLC
USA COMPRESSION PARTNERS LP
ROSEMOUNT INC
ELITE LIFT SOLUTIONS LLC
TIM W OLSON CONSTRUCTION INC
HUNT OIL COMPANY
INTEGRITY FACTORING &
ALLY CONSULTING LLC
CORPAC STEEL PRODUCTS CORP
SECURE ENERGY SERVICES USA LLC
CALIBER MIDSTREAM PARTNERS LP
GST CASING INC
TALLY CONSTRUCTION LLC
MOUNTRAIL-WILLIAMS ELECTRIC
SUND MANUFACTURING CO INC
PIONEER WELL SERVICES LLC
LIQUID CAPITAL EXCHANGE INC
WINN-MARION-BARBER LLC
WESCO DISTRIBUTION INC
ZAVANNA LLC
TOTAL DIRECTIONAL SVCS LLC
CYPRESS ENERGY PARTNERS
KEANE FRAC LP
US WATER SERVICES
ALLY EQUIPMENT LLC
CAPEX OILFIELD SERVICES INC
DNB ENERGY SERVICES
ARCHROCK PARTNERS LP
CRESTMARK BANK
NOVA OILFIELD SERVICES INC
LOCKEN OILFIELD SERVICE
J & A SERVICES LLC
DECCA CONSULTING INC
M & E TRUCKING LLC
HOSS RENTALS INC

DAKOTA DEADMAN AND ANCHOR
TCI BUSINESS CAPITAL
TRENCHLINE ENERGY SERVICES
LOWER YELLOWSTONE RURAL
ACE IN THE HOLE CONSTRUCTION
CREEDENCE ENERGY SERVICES LLC
CUSTOM CHEMICAL SOLUTIONS LLC
COIL TUBING PARTNERS LLC
OUTLAW WELL SERVICE INC
FRONTLINE CONSULTING LLC
WISCO INC
BOBS OILFIELD SERVICE INC
AUTOMATION & ELECTRONICS INC
PASON SYSTEMS USA CORP
BENZ OIL CO INC
EXCEED OILFIELD EQUIPMENT INC
CAPITAL WELL SERVICES
NETJETS AVIATION INC
KLX ENERGY SERVICES LLC
DEAN R BAUSTE TRUCKING INC
HEAT WAVES HOT OIL SERVICE LLC
PURITY OILFIELD SERVICES LLC
FLARE INDUSTRIES LLC
EVOLUTION MANAGEMENT INC
PETROLEUM EXPERIENCE INC
DAN FLADELANDS WELL SERV INC
MBI ENERGY LOGISTICS LLC
                    HEP HB 3903 LLC

<u>**Schedule 2**</u>

**Disclosures Regarding Relationship with Potential Parties in Interest**

1. Moelis (or its financial advisory affiliates) has been engaged within the last two years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee):

<u>5% OR MORE EQUITY HOLDERS</u>
- BLACK ROCK, INC.
- FMR LLC
- STATE STREET CORPORATION – SSGA FUNDS MANAGEMENT, INC.

<u>BANKS / LENDER / UCC LIEN PARTIES / ADMINISTRATIVE AGENTS</u>
- BANK OF AMERICA, N.A.
- ING CAPITAL LLC
- JP MORGAN CHASE BANK, N.A.
- MERRILL LYNCH COMMODITIES, INC.
- U.S. BANK NATIONAL ASSOCIATION
- WELLS FARGO BANK, NATIONAL ASSOCIATION

<u>BONDHOLDERS – INDENTURE TRUSTEE</u>
- ALLIANCEBERNSTEIN LP
- BLACKROCK INVESTMENT MANAGEMENT
- JP MORGAN ASSET MANAGEMENT
- LOOMIS, SAYLES & COMPANY LP
- THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.
- WELLS FARGO SECURITIES

<u>INSURANCE – PFA</u>
- ACE AMERICAN INSURANCE COMPANY (CHUBB)
- FEDERAL INSURANCE COMPANY (CHUBB)
- ZURICH AMERICAN INSURANCE COMPANY

<u>OTHER SIGNIFICANT CREDITORS</u>
- BANK OF NEW YORK MELLON TRUST (WHZ)
- JP MORGAN CHASE BANK, N.A.

<u>ROYALTY INTEREST HOLDER</u>
- ZAVANNA LLC

<u>TOP 30 CREDITORS</u>

- BAKER HUGHES
- KEY ENERGY SERVICES LLC
- THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.

VENDORS
- BAKER HUGHES
- JP MORGAN CHASE BANK, N.A.
- KEY ENERGY SERVICES LLC
- THE BANK OF NEW YORK MELLON
- WELLS FARGO SECURITIES
- ZAVANNA LLC