# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) Case No. 20-32021 (DRJ) <br> ) <br> ) (Jointly Administered) |
| Debtors. | ) (Emergency Hearing Requested) <br> ) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS, SHELL TRADING (US) COMPANY, JAMEX MARKETING, LLC, AND JAMES H. BALLENGEE

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 10, 2020, AT 11:30 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JUNE 12, 2020.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1 (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion:

## Relief Requested

1.  The Debtors seek entry of entry of an order, substantially in the form attached hereto (the "Order"): (a) approving the form of the Settlement Agreement (the "Agreement"), attached as **Exhibit 1** to the Order, by and among the Debtors, Shell Trading (US) Company ("Shell"), Jamex Marketing, LLC ("Jamex"), and James H. Ballengee ("Ballengee", and together with Jamex, the "Claimants", and collectively with the Debtors and Shell, the "Parties");(b) authorizing the Debtors to perform any and all obligations contemplated in the Agreement; and (c) granting such other relief as the Court deems proper.

## Jurisdiction and Venue

2.  The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Bankruptcy Rules 2002 and 9019.

---

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Whiting Petroleum Corporation., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] and the *Declaration of Correne S. Loeffler, Chief Financial Officer of Whiting Petroleum Corporation and Whiting Oil and Gas Corporation, in Support of the Debtors' First Day Motions* [Docket No. 33] (the "First Day Declarations").

**Background**

5.      Whiting Petroleum Corporation ("WLL") and its Debtor affiliates are an independent exploration and production company with an oil focused asset base.  The Debtors' primary production and development activities are located in North Dakota and the Rocky Mountain region, with additional oil and gas properties located in Texas.  The Debtors' assets predominately are mature properties with stable, high-quality, oil-weighted production. Headquartered in Denver, Colorado, the Debtors have approximately 500 employees. The Debtors' operating revenue for the twelve-month period that ended December 31, 2019 was approximately $1.6 billion, and, as of the Petition Date, the Debtors have approximately $3.4 billion in total funded debt obligations.

6.      On April 1, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 1, 2020, the Court entered an order [Docket No. 15] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On April 10, 2020, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 127].

**The Agreement**

7.      Following weeks of extensive good-faith, arm's-length discussions, the Debtors have reached an multi-party settlement agreement with Shell—a key commercial relationship— and the Claimants.  That agreement, subject to Court approval, will result in the settlement of protracted litigation involving the Parties, result in over $4 million in cash being transferred by Shell to the Debtors, obviate potential litigation involving the Debtors and their chapter 11 cases

(including with respect to their plan of reorganization and other key matters). Accordingly, the Debtors request that the Court authorize the Debtors to enter into the Settlement Agreement.

8. More specifically, on May 12, 2015, Whiting Oil and Gas Corporation ("WOG") and Shell entered into a Master Crude Purchase and Sale Agreement Confirmation (the "Whiting-Shell Confirmation"), which provided for the purchase and sale of crude petroleum at the inlet flange of the Dakota Access Pipeline located in Stanley, North Dakota ("DAPL").

9. On June 1, 2017, WOG and Shell entered into a Master Crude Purchase and Sale Agreement Amended and Restated Confirmation (the "Amended Whiting-Shell Confirmation"), which provided terms and conditions for the purchase and sale of crude petroleum at the inlet flange of the Robinson Lake Pipeline at Robinson Lake in Mountrail County, North Dakota ("RLP").

10. Also on June 1, 2017, Jamex and Shell entered into a Master Crude Purchase and Sale Agreement and Master Crude Purchase and Sale Confirmation (collectively, the "Jamex-Shell Confirmation"), which provided terms and conditions for the sale of crude petroleum to Jamex at the inlet flange of the DAPL.

11. On October 26, 2017, WOG asked Shell to cease making payments of $1.40 per barrel to Jamex on Whiting's behalf (the "Whiting Directive"). Shell then terminated the Jamex-Shell Confirmation and ceased making payments to Jamex under the Jamex-Shell Confirmation effective December 1, 2017. Since December 1, 2017, Shell has accumulated funds related to the parties' dispute (the "Held Funds").

12. On April 6, 2018, Jamex filed a lawsuit styled as *Jamex Marketing, LLC v. Whiting Petroleum Corp.*, No. DC-18-04574, in the 68th District Court of Dallas County, Texas, alleging that Whiting Oil and Gas Corporation and Whiting Petroleum Corporation (collectively

"Whiting") tortiously interfered with the Jamex-Shell Confirmation (the "Whiting Lawsuit"). Since the Petition Date, the Claimants have moved on two separate occasions to lift the automatic stay to pursue the Whiting Lawsuit, including once on an emergency basis [Docket Nos. 196, 305]. While the Court denied the initial motion's request for emergency consideration and the Claimants withdrew the second motion, the pendency of those motions and the possibility that the Claimants may again seek to lift the automatic stay has required the Debtors and their counsel to spend significant time and attention on this matter at a critical juncture in these cases [Docket Nos. 214, 380].

13. On February 12, 2020, Jamex filed a lawsuit styled as *Jamex Marketing, LLC v. Shell Trading (US) Company*, No. DC-20-02413, in the 68th District Court of Dallas County, Texas, alleging that Shell breached the Jamex-Shell Confirmation (the "Shell Lawsuit"). The Shell Lawsuit is expected to go to trial next year, and Jamex has already served a third-party subpoena on the Debtors. Accordingly, the Debtors and their counsel have spent and will spend additional time addressing the Shell Lawsuit.

14. Whiting has denied the material allegations against it, asserted defenses, and brought counterclaims against Jamex and third-party claims against Ballengee in the Whiting Lawsuit. Jamex and Ballengee have denied the material allegations against them and asserted defenses in the Whiting Lawsuit.

15. The Parties engaged in extensive good faith, arm's-length discussions regarding the Parties' potential liability under the Jamex-Shell Confirmation, the Whiting Lawsuit, and the Shell Lawsuit. These discussions were productive, and the parties have agreed to resolve disputes on the terms set forth in the Agreement.[3] Specifically, the Agreement provides for Shell

---

[3] In the event this summary is inconsistent with the terms of the Agreement, the Agreement shall govern.

to release the Held Funds as follows: (a) $13,850,000 to Jamex within five (5) days after approval of the Agreement by the Court (the "Jamex Payment"); and (b) the remainder of all Held Funds to the Debtors within five (5) days after approval of the Agreement by the Court (the "Whiting Payment").

16. As consideration for the release of the Held Funds, the Parties have agreed to mutual releases and covenants, including a release of Shell from liability. In addition, the Agreement requires the Claimants shall not file any pleading or appear in any matter in these chapter 11 cases, and Jamex will resign from the Committee. While this Motion is being filed on an emergency basis in light of the express terms of the Settlement Agreement, the Debtors have engaged in extensive dialogue with their key constituents (including their prepetition revolving agent, the Committee, and the Ad Hoc Group of Consenting Noteholders) regarding matters involving the Claimants. Furthermore, since the Debtors entered into settlement discussions with the Claimants, the Debtors have provided periodic updates to the advisers to their other key stakeholders, as well as Shell, to keep them abreast of the developments.

## Basis for Relief

**A.  Consummating the Agreement is a Sound Exercise of the Debtors' Business Judgment.**

17. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct").

18.  The Debtors respectfully submit that the Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates. The Agreement monetizes claims that were previously mired in litigation and provides a cash infusion that will benefit the Debtors' estates. This capital can be a useful resource for the Debtors as they manage their operations during these chapter 11 proceedings and continue working toward confirmation of the *Joint Chapter 11 Plan of Reorganization of Whiting Petroleum Corporation and Its Debtor Affiliates* [Docket No. 198] (the "Plan").

19.  In addition, the Agreement was the result of extensive negotiations among the Parties, which, if approved by the Court, will allow the Parties to avoid costly litigation with respect to the Parties' underlying claims as well as key matters in these chapter 11 cases, including the Debtors' proposed Plan. The outcome of litigation involving the underlying claims is subject to risk. Because of this risk, prior to filing these cases the Debtors and Jamex had already engaged in mediation and extensive settlement efforts. This Agreement resolves all pending disputes with the Claimants, enabling the Debtors to focus the efforts of their advisors and other resources on their core business and these chapter 11 cases. The ongoing litigation with the Claimants has become a distraction for the Debtors, and the Agreement will remove this

distraction allowing the Debtors to concentrate on their business and these cases.  Finally, the Agreement allows the Debtors to realize immediate returns on account of claims that could have taken months or years to liquidate and limits the uncertainty of long-term litigation, the pendency of which may affect the Debtors' ability to promptly prosecute their chapter 11 plan process and emerge as a more viable business enterprise.  The immediate return of the Held Funds will help the Debtors maintain a strong liquidity position as they focus on confirmation of the Plan.  Accordingly, the Debtors respectfully request that the Court enter the Order and authorize the Debtors to proceed with the Agreement as such action is a sound exercise of the Debtors' business judgment and in the best interest of their estates.

**B.      The Agreement Satisfies the Standards of Bankruptcy Rule 9019 and Should Be Approved.**

20.   Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

21.   "To minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996);  *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

22. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "the decision to approve a compromise lies within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

23. In *Jackson Brewing*, the United States Court of Appeals for the Fifth Circuit set forth a balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

24. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

25. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the

court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

26. The Debtors satisfy these standards with respect to the Agreement. The first two factors of the *Jackson Brewing* balancing test, taken together, suggest that the Agreement represents a fair and reasonable compromise and is in the best interest of the estate. With respect to the first *Jackson Brewing* factor, "the probability of success in litigating the claim subject to settlement," the Debtors, after consulting with their counsel in relation to the Whiting Lawsuit, are confident in their position in the Whiting Lawsuit. However, there is no guarantee of success and litigation is inherently uncertain. In contrast, the Agreement provides both certainty and finality, in addition to returning of a portion of the Held Funds to the Debtors. With respect to the second *Jackson Brewing* factor, "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," continued litigation with the Claimants (including, without limitation, the possibility that the Debtors could be required to participate in discovery and/or other proceedings related to the Shell Lawsuit). Such litigation would be costly and would inconvenience the Debtors at a time when they are focused on these chapter 11 cases.

27. Lastly, with respect to the third factor, a variety of "other factors bear[] on the wisdom of the compromise" contemplated by the proposed Settlement Agreement. More specifically, this Court's approval of the proposed Settlement Agreement will remove one obstacle to confirmation of the Plan, which the Claimants are expected to oppose absent approval of the requested relief, and which would in turn delay the Debtors' emergence from chapter 11.

28. Based on the foregoing considerations, the Debtors respectfully submit that the Agreement represents a fair and reasonable compromise that is in the best interest of the

Debtors' estates. The Debtors have determined in their reasonable business judgment that the benefits of the Agreement outweigh their costs after considering the probability of success in defending Jamex's claim and prosecuting their counterclaims, the complexity and likely duration of litigation and related expenses and inconvenience.

29. The Agreement meets other factors that bear on approval of the compromise, as it benefits the creditors' interests and is truly the product of arm's-length bargaining. From the creditors' perspective, this Agreement brings value in the form of payment to the Debtors of the remainder of the Held Funds. Further, there is no concern that this Agreement was the product of fraud or collusion. The Debtors, Claimants and Shell, each of which was represented by counsel, engaged in intense, arm's-length negotiations to reach the Agreement. For all of these reasons, the Debtors respectfully request that the Court approve this Agreement.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

31. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim

or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Emergency Consideration**

32. Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion. The terms of the Agreement provide that the Parties shall use commercially reasonable efforts to cause the Court to enter an order approving the relief sought in this motion no later than June 10, 2020. Further, the date by which parties must file proofs of claim in these chapter 11 cases is June 15, 2020. Therefore, to comply with the terms of the Agreement and prevent the Claimants from unnecessarily needing to file a proof of claim, the Parties believe emergency consideration of this motion is warranted. Furthermore, as noted above, the Debtors have engaged in extensive dialogue with their key constituents (including their prepetition revolving agent, the Committee, and the Ad Hoc Group of Consenting Noteholders) regarding matters involving the Claimants. Furthermore, since the Debtors entered

into settlement discussions with the Claimants, the Debtors have provided periodic updates to the advisers to their other key stakeholders, as well as Shell, to keep them abreast of the developments.

### Notice

33. The Debtors will provide notice of this motion to the following parties or their counsel: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility; (d) the lenders under the Debtors' prepetition revolving credit facility; (e) the indenture trustee for the Debtors' unsecured notes; (f) the ad hoc group of senior noteholders; (g) the Committee; (h) the Claimants and their counsel; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances

Houston, Texas
June 5, 2020

Respectfully Submitted,

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.**<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>Jennifer F. Wertz (TX Bar No. 24072822)<br>Veronica A. Polnick (TX Bar No. 24079148)<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone:   (713) 752-4200<br>Facsimile:    (713) 752-4221<br>Email:          mcavenaugh@jw.com<br>                     jwertz@jw.com<br>                     vpolnick@jw.com<br><br>*Co-Counsel to the Debtors*<br>*and Debtors in Possession* | **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Brian Schartz, P.C. (TX Bar No. 24099361)<br>Anna Rotman, P.C. (TX Bar No. 24046761)<br>609 Main Street<br>Houston, Texas 77002<br>Telephone:   (713) 836-3600<br>Facsimile:    (713) 836-3601<br>Email:          brian.schartz@kirkland.com<br>                     anna.rotman@kirkland.com<br><br>-and-<br><br>Gregory F. Pesce (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:          gregory.pesce@kirkland.com<br><br>-and-<br><br>Stephen Hessler, P.C. (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          stephen.hessler@kirkland.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* |

**Certificate of Service**

I certify that on June 5, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/ Matthew D. Cavenaugh*
                                                  Matthew D. Cavenaugh