**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) | Case No. 20-32021 (DRJ) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Re: Docket No. __** |

**ORDER APPROVING SETTLEMENT AGREEMENT
BETWEEN THE DEBTORS, SHELL TRADING (US)
COMPANY, JAMEX MARKETING, LLC, AND JAMES H. BALLENGEE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving the terms of the Agreement attached as **Exhibit 1** hereto and (b) authorizing the Debtors to perform any and all obligations contemplated in the Agreement, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, the Agreement is authorized and approved in its entirety.

3.      The Debtors are authorized to execute, deliver, and implement the Agreement.

4.      The Debtors are authorized to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated in the Agreement and this Order, and the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Agreement and not for any other purpose.

5.      The releases contained in the Agreement, including as set forth in sections 2.3(b), 2.3(c), and 2.3(d), are hereby approved in their entirety.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors and the Claimants are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2020

_____
JUDGE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Settlement Agreement**

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement ("Agreement") is entered into by the Whiting Debtors (as defined herein), Shell Trading (US) Company ("Shell"), Jamex Marketing, LLC ("Jamex"), and James H. Ballengee ("Ballengee").

## 1. RECITALS

1.1.    WHEREAS Whiting Oil and Gas Corporation and Shell entered into a Master Crude Purchase and Sale Agreement Confirmation and Master Crude Petroleum Purchase and Sale Agreement dated May 12, 2015 (collectively the "Whiting-Shell Confirmation");

1.2.    WHEREAS Whiting Oil and Gas Corporation and Shell entered into a Master Crude Purchase and Sale Agreement Amended and Restated Confirmation effective June 1, 2017 (the "Amended Whiting-Shell Confirmation");

1.3.    WHEREAS Jamex and Shell entered into a Master Crude Purchase and Sale Agreement and Master Crude Purchase and Sale Confirmation effective as of June 1, 2017 (collectively, the "Jamex-Shell Confirmation");

1.4.    WHEREAS by letter of October 26, 2017, Whiting Oil and Gas Corporation asked Shell to cease making payments of $1.40 per barrel to Jamex on Whiting's behalf (the "Whiting Directive");

1.5.    WHEREAS by letter of October 31, 2017 Shell terminated the Jamex-Shell Confirmation effective November 30, 2017 (the "Termination Letter");

1.6.    WHEREAS Shell ceased making payments to Jamex under the Jamex-Shell Confirmation effective December 1, 2017;

1.7.    WHEREAS, since December 1, 2017 Shell has accumulated funds related to the Parties' disputes (the "Held Funds");

1.8.    WHEREAS on April 6, 2018 Jamex filed a lawsuit under the style *Jamex Marketing, LLC v. Whiting Petroleum Corp.*, No. DC-18-04574, in the 68th District Court of Dallas County, Texas (the "68th Court"), alleging that Whiting Oil and Gas Corporation and Whiting Petroleum Corporation (collectively "Whiting") tortiously interfered with the Jamex-Shell Confirmation (the "Whiting Lawsuit");

1.9.    WHEREAS on February 12, 2020, Jamex filed a lawsuit under the style *Jamex Marketing, LLC v. Shell Trading (US) Company*, No. DC-20-02413, in the 68th District Court of Dallas County, Texas, alleging that Shell breached the Jamex-Shell Confirmation (the "Shell Lawsuit");

1.10.    WHEREAS Whiting has denied the material allegations against it, asserted defenses, and brought counterclaims against Jamex and third-party claims against Ballengee in the Whiting Lawsuit;

1.11.   WHEREAS Jamex and Ballengee have denied the material allegations against them and asserted defenses in the Whiting Lawsuit and Jamex has denied the material allegations against it in the Shell Lawsuit;

1.12.   WHEREAS Shell has denied the material allegations against it and asserted defenses and counterclaims in the Shell Lawsuit;

1.13.   WHEREAS on April 1, 2020, Whiting Petroleum Corporation and certain of its affiliates (collectively, the "Whiting Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which have been jointly administered under case number 20-32021 (DRJ) (collectively, the "Chapter 11 Cases");

1.14.   WHEREAS on April 23, 2020, the Whiting Debtors filed the *Joint Chapter 11 Plan of Reorganization of Whiting Petroleum Corporation and Its Debtor Affiliates* [Docket No. 198] (the "Plan") (as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments);

1.15.   WHEREAS, after the filing of the Chapter 11 Cases and on April 17, 2020, Shell and Whiting Oil and Gas Corporation entered into a Master Crude Petroleum Purchase and Sale Agreement, Master Crude Purchase and Sale Agreement Confirmation, Contract Ref. C231OP0051, Contract Ref. C231OP0052 and Contract Ref. CLP0003454 (the "Post-Petition Agreements"); and

1.16.   WHEREAS the Whiting Debtors, Shell, Jamex, and Ballengee (the "Parties") wish to avoid the uncertainties of litigation and to resolve all disputes between them, including the Whiting Lawsuit and the Shell Lawsuit.

NOW, THEREFORE, in consideration of the Parties' mutual promises in this Agreement and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties agree as follows:

## 2. AGREEMENT

2.1.   **Effective Date and Conditions.** Within two (2) business days of the date after this Agreement has been signed by all Parties, the Parties agree to file a *Motion to Approve Compromise of Controversy* (the "Settlement Motion"), which shall be prepared by counsel for the Whiting Debtors and approved by Jamex's counsel (such approval shall not be unreasonably withheld or delayed).  The Whiting Debtors shall use commercially reasonable efforts to cause the Bankruptcy Court to enter an order approving the relief sought in the Settlement Motion (the "Settlement Order") no later than June 10, 2020, which order shall be substantially in the form attached hereto as **Exhibit A**. Notwithstanding any other provision of this Agreement, the effectiveness of this Agreement is subject to and conditioned upon entry of the Settlement Order and shall be effective and enforceable on the date that the Bankruptcy Court enters the Settlement Order (the "Effective Date") and lifting

the automatic stay so that the Whiting Lawsuit and the Shell Lawsuit each be dismissed in accordance with this Agreement. All Parties will cooperate in the effort to obtain prompt entry of the Settlement Order. If the Settlement Order is not entered by June 12, 2020, this Agreement, in its entirety, shall be entirely null and void ab initio and not admissible in any proceeding for any reason.

2.2. **Settlement Payments.**

(a.)   Within five (5) business days after entry of the Settlement Order, Shell will transfer $13,850,000.00 from the Held Funds to Jamex ("Jamex Payment") by wire transfer pursuant to written instructions attached hereto as **Exhibit B**. As set forth below, upon receipt of the Jamex Payment, Jamex/Ballengee Releasors waive and release the right to any additional proceeds or payments related to the Jamex-Shell Confirmation. Subject to entry of the Settlement Order, each Whiting Debtor shall be deemed to approve and consent to the Jamex Payment in accordance with the terms of this Agreement.

(b.)   Within five (5) business days after entry of the Settlement Order, Shell will transfer the Held Funds, minus the Jamex Payment, to the Whiting Debtors ("Whiting Payment") by wire transfer of immediately available funds pursuant to written instructions attached hereto as **Exhibit C**. Subject to entry of the Settlement Order, Jamex and Ballengee shall be deemed to approve and consent to the Whiting Payment.

2.3. **Releases of Liability, Covenants Not to Sue, and Indemnities.**

(a.)   **Definitions.**

1.   "Claims" means any and all rights, obligations, disputes, claims (as such term is defined under section 101(5) of the Bankruptcy Code), actions, causes of action, debts, damages, demands, judgments, offsets, payments, costs, attorney's fees, proceedings, costs, complaints, controversies, losses, arguments, promises, undertakings, reimbursement claims, contribution claims, recoupment rights, interests, third-party claims, indemnity claims, remedies, suits, accounts, defenses, affirmative defenses, powers, privileges, licenses, franchises, counterclaims and crossclaims, acts omitted or committed of every nature, obligations of every kind and nature, rights, liabilities, charges, or expenses, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, that directly or indirectly relate to or concern the Held Funds, the Whiting Directive, the Whiting-Shell Confirmation, the Amended Whiting-Shell

Confirmation, the Termination Letter, the Jamex Payment, the Whiting Payment, the Jamex-Shell Confirmation, the Post-Petition Agreements or that the releasing party asserted or could have asserted in the Whiting Lawsuit or the Shell Lawsuit, in tort, law, equity, or otherwise pursuant to any theory of law.

2.   "Jamex/Ballengee Releasors" means Jamex and Ballengee, on behalf of themselves and each of their respective affiliates, partners, officers, managers, shareholders, members, employees, agents, attorneys, accountants, transferees, trustees, representatives, advisors, successors and assigns, and any and all other persons, firms, corporations, related and associated entities, subsidiaries, former employees or entities that could or might act on their behalf.   For the avoidance of doubt, the Jamex/Ballengee Releasors include all firms, corporations, and other entities over which Jamex or Ballengee exercises actual, effective, or apparent control and also specifically includes Stampede Energy LLC, Stampede Crude Dakota, LLC, Jamex, LLC and Jorgan Development, LLC.

3.   "Shell Releasors" means Shell, on its own behalf and on behalf of any affiliated, related, and associated entities, subsidiaries, and entities managed, controlled, under common control by or with any of the foregoing, including entities in which any of the foregoing possesses any kind of interest in, and each of their respective current and former successors, assigns, administrators, executors, officers, directors, members, shareholders, partners, managers, trustees, attorneys, agents, representatives, employees, former employees and other person or entity claiming by or through them.

4.   "Whiting Releasors" means the Whiting Debtors, on their own behalf and their estates and on behalf of any affiliated, related, and/or associated entities, subsidiaries, and entities managed, controlled, under common control by or with any of the foregoing, including entities in which any of the foregoing possesses any kind of interest in, and each of their respective current and former successors, assigns, administrators, executors, officers, directors, members, shareholders, partners, managers, trustees, attorneys, agents, representatives, employees, former employees and other person or entity claiming by or through them.

5.   "Jamex Releasors" has the same meaning as the "Jamex/Ballengee Releasors."

6.   "Shell Releasees" means Shell and any affiliated, related, and/or associated entities, subsidiaries, and entities managed, controlled, or under common control by or with any of the foregoing, and each of their respective current and former successors, assigns, administrators, executors, officers, directors, members, shareholders, partners, managers, trustees, attorneys,

DocuSign Envelope ID: 22A2B33A-74BB-4G63-A0BB-C19B91EA6857

agents, representatives, employees, and former employees, collectively and in their individual capacity.

7. "Whiting Releasees" means each Whiting Debtor and any affiliated, related, and/or associated entities, subsidiaries, and entities managed, controlled, or under common control by or with any of the foregoing, and each of their respective current and former successors, assigns, administrators, executors, officers, directors, members, shareholders, partners, managers, trustees, attorneys, agents, representatives, employees, and former employees, collectively and in their individual capacity.

(b.) **Jamex/Ballengee Release and Covenant Not to Sue.** Effective upon execution of this Agreement, the Jamex/Ballengee Releasors agree to immediately cease all activity in the Shell Lawsuit, including, but not limited to, any direct or indirect efforts to enforce, or directly or indirectly cause any other person or entity to enforce, the subpoena it served on Whiting on May 8, 2020, taking any depositions, setting any motions for hearing, or seeking any documents from Shell or any third-parties. Effective upon entry of the Settlement Order and upon Jamex's receipt of the Jamex Payment, the Jamex/Ballengee Releasors shall be deemed to (i) release, acquit, hold harmless and forever discharge the Whiting Releasees and the Shell Releasees from all Claims; (ii) irrevocably waive and release the Whiting Releasees and the Shell Releasees with respect to, any claim or right to any additional proceeds or payments (excluding the Jamex Payment and previous payments to Jamex) attributable to the production of crude oil by Whiting, pursuant to the Jamex-Shell Confirmation and/or pursuant to any agreement between Whiting and Shell; (iii) covenant not to sue any of the Whiting Releasees or the Shell Releasees for any of the matters set forth in clauses (i) and (ii) of this Section 2.3(b) or any related claims; (iv) acknowledge and agree that with respect to the Chapter 11 Cases (a) they have no claim against any of the Whiting Debtors; (b) any pending written proof of claim filed by the Jamex/Ballengee Releasors will be deemed immediately withdrawn with prejudice without further action by any party; (c) are not a "party in interest"; (d) they will not file any pleading or appear in any matter in the Chapter 11 Cases; and (e) Jamex will resign from the Official Committee of Unsecured Creditors appointed in the Whiting Debtors' Chapter 11 cases and decline to serve on such committee or any other official committee appointed in the Whiting Debtors' Chapter 11 cases. Effective upon entry of the Settlement Order and receipt of the Jamex Payment, Jamex and Ballengee shall be, and shall be deemed to agree that they are, permanently enjoined from: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Whiting Debtors

or the property of the Whiting Debtors on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Whiting Debtors or against the property of the Whiting Debtors on account of or in connection with or with respect to any such Claims unless such Whiting Debtor has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that Whiting Debtor asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released or settled pursuant to this Agreement. Effective upon receipt of the Jamex Payment and in addition to the indemnity set forth below in 2.3(e), Jamex and Ballengee agree to indemnify, defend, and hold harmless the Whiting Releasees and the Shell Releasees against any claim that the Jamex/Ballengee Releasors or a non-Party have a right or are entitled to any portion of the Jamex Payment (except as provided in this Agreement), the Whiting Payment, or to any payment under or in respect of the Jamex-Shell Confirmation. Stampede Energy LLC, Stampede Crude Dakota, LLC, Jamex, LLC, and Jorgan Development, LLC agree that, to the extent such parties had any Claims against the Shell Releasees or the Whiting Releasees, such Claims are released and acknowledge and agree that with respect to the Chapter 11 Cases (a) they have no claim against any of the Whiting Debtors; (b) any pending written proof of claim filed by the Jamex/Ballengee Releasors will be deemed immediately withdrawn with prejudice without further action by any party; (c) they are not a "party in interest"; and (d) they will not file any pleading or appear in any matter in the Chapter 11 Cases. Notwithstanding anything to the contrary, the indemnities by Jamex do not apply to any Post-Petition Agreements.

(c.) **Whiting Release and Covenant Not to Sue.** Effective upon entry of the Settlement Order and upon the Whiting Debtors' receipt of the Whiting Payment, the Whiting Releasors release, acquit, hold harmless and forever discharge (i) the Jamex Releasees from all Claims including all claims arising from or relating to any tax obligation or tax refund, and (ii) the Shell Releasees from all Claims arising before the Effective Date that pertain in any way to, arise from or are related to the Jamex-Shell Confirmation, the Whiting Directive, the Termination Letter or the Whiting Payment. The Whiting Releasors covenant not to sue any of the Jamex Releasees or the Shell Releasees for any of the Claims or claims released pursuant to this Agreement or related claims. Notwithstanding the foregoing, the release and covenant not to sue under this provision applicable to the Shell Releasees shall not relate to or cover the Post-Petition Agreements.

(d.) **Shell Release and Covenant Not to Sue.** Effective upon entry of the Settlement Order and upon payment of the Whiting Payment and the Jamex

Payment, the Shell Releasors release, acquit, and forever discharge the Jamex Releasees from claims arising before the Effective Date that pertain in any way to, arise from or are related to the Jamex-Shell Confirmation, the Whiting Directive, the Whiting-Shell Confirmation, the Amended Whiting-Shell Confirmation, the Post-Petition Agreements, the Whiting Payment or the Jamex Payment; and release, acquit and forever discharge the Whiting Releasees from all claims arising before the Effective Date that pertain in any way to, arise from or are related to the Jamex-Shell Confirmation, the Whiting Directive, the Termination Letter or the Whiting Payment.  These releases are subject to the indemnity obligations provided to Shell in section 2.3(e) and (f). Shell covenants not to sue any of the Jamex Releasees or the Whiting Releasees for any of the claims released pursuant to this provision.  Notwithstanding the foregoing, the release and covenant not to sue under this provision applicable to the Whiting Releasees shall not relate to or cover the Post-Petition Agreements.

(e.)   **Indemnification of Shell by Jamex and Ballengee**. Effective upon payment of the Jamex Payment and subject to the limitations set forth below in this Section 2.3(e), Jamex and Ballengee, jointly and severally, will and do hereby further agree to indemnify, defend, and hold Shell Releasees harmless from any and all Claims (excluding those claims arising from or related to the Post-Petition Agreements) which may be asserted against the Shell Releasees brought on or after the Effective Date arising from, related to, or pertaining in any way to the Whiting Directive, the Termination Letter, the Whiting-Shell Confirmation, the Amended Whiting-Shell Confirmation, the Jamex-Shell Confirmation, the Whiting Payment and/or the Jamex Payment, including any Claims (excluding those claims arising from or related to the Post-Petition Agreements) by the Jamex/Ballengee Releasors, Whiting Petroleum Corporation and Whiting Oil and Gas Corporation, Stampede Energy, LLC, Stampede Crude Dakota, LLC, Jamex, LLC and Jorgan Development, LLC (the "Jamex Indemnity Obligations"), except to the extent that such Claims are attributable to a finding of willful misconduct by a court of competent jurisdiction.  Shell will reasonably cooperate with Jamex and Ballengee (including making Shell witnesses reasonably available) to assist Jamex and Ballengee in the defense of any such Claims; provided, however, all cooperation will be at the sole cost and expense of Jamex and Ballengee. Notwithstanding the foregoing, (i) the Jamex Indemnity Obligations shall apply only to the extent, if any, they are based on alleged entitlement to $1.40 per barrel of crude oil pursuant to the Jamex-Shell Confirmation, the Whiting-Shell Confirmation, the Amended Whiting-Shell Confirmation ("Jamex Limited Claims"); and, (ii) in no event shall the Jamex Indemnity Obligations exceed the amount of twenty-five million U.S. Dollars ($25,000,000).   The Jamex Indemnity Obligations shall terminate on the latter of:  (i) June 1, 2021 or; (ii) the date on which the statute of limitations for the relevant Jamex Limited Claims expires, whichever occurs later, unless Shell delivers a notice of Claims

DocuSign Envelope ID: 32A2B33A-74BD-4C63-A8BB-C19591FA66F3

and request for indemnity and defense in writing to Jamex and Ballengee with respect to the relevant Jamex Limited Claims on or before such date.

(f.) **<u>Indemnification of Shell by Whiting</u>**. Effective upon payment of the Whiting Payment and subject to the limitations set forth below in this Section 2.3(f), Whiting will and does hereby further agree to indemnify, defend, and hold Shell Releasees harmless from any and all Claims which may be asserted against the Shell Releasees brought on or after the Effective Date arising from, related to, or pertaining in any way to the Whiting Directive, the Termination Letter, the Whiting-Shell Confirmation, the Amended Whiting-Shell Confirmation, the Jamex-Shell Confirmation, the Post-Petition Agreements and/or the Whiting Payment, including any Claims by Jamex Marketing, LLC, Stampede Energy, LLC, Stampede Crude Dakota, LLC, Jamex, LLC, Jorgan Development, LLC, James Ballengee, and the Whiting Releasors, (the "<u>Whiting Indemnity Obligations</u>"), except to the extent that such Claims are attributable to a finding of willful misconduct by a court of competent jurisdiction. Shell will reasonably cooperate with Whiting (including making Shell witnesses reasonably available) to assist Whiting in the defense of any such Claims; provided, however, all cooperation will be at the sole cost and expense of Whiting. Notwithstanding the foregoing, (i) the Whiting Indemnity Obligations shall apply to Claims only to the extent, if any, they are based on alleged entitlement to $1.40 per barrel of crude oil pursuant to the Jamex-Shell Confirmation, Whiting-Shell Confirmation, Amended Whiting-Shell Confirmation or the Post-Petition Agreements between Whiting and Shell ("<u>Whiting Limited Claims</u>") and (ii) in no event shall the Whiting Indemnity Obligations exceed the amount of twenty-five million U.S. Dollars ($25,000,000). The Whiting Indemnity Obligations shall terminate on the latter of: (i) June 1, 2021 or; (ii) the date on which the statute of limitations for the relevant Whiting Limited Claims expires, whichever occurs later, unless Shell delivers a notice of Claims and request for indemnity and defense in writing to Whiting with respect to the relevant Whiting Limited Claims on or before such date.

### 3. ADDITIONAL TERMS

3.1. **Dismissals and Final Judgment.** Within two (2) days after Jamex has received the Jamex Payment and the Whiting Debtors have received the Whiting Payment, the Parties will file joint motions to dismiss with prejudice all claims and causes of action asserted in the Whiting Lawsuit and the Shell Lawsuit, with each side bearing its own attorneys' fees and costs in connection with such dismissal with prejudice. The Parties consent and agree to dismissing all claims in each lawsuit with prejudice to the refiling of such claims. Counterclaims also shall be dismissed with prejudice. Each party will bear its own attorneys' fees and costs in connection with the Whiting Lawsuit and Shell Lawsuit.

3.2. **Discovery of Additional Facts.** The Parties acknowledge that they may hereafter discover claims or facts in addition to or different from those which they now know or

believe to exist with respect to the subject matter of this Agreement and which, if known or suspected by them at the time of execution of this Agreement, may have materially affected this settlement. Nevertheless, except as provided above, the Parties hereby waive any right, claim, or cause of action that might arise as a result of such different or additional claims based on or related to facts existing on or prior to the Effective Date. The Parties acknowledge that they understand the significance and consequence of such specific releases and such specific waivers.

3.3.     **Representations and Warranties.** Each Party represents and warrants that it or he has full authority to enter into this Agreement, including the provisions relating to the Whiting Payment, the Jamex Payment, and the releases, and that it or he has not assigned to any non-Party any rights, claims, or causes of action that are to be released under this Agreement. Jamex and Ballengee further represent and warrant to the Whiting Debtors that Jamex and Ballengee are unaware of any assertion or claim by any non-Party, including, without limitation, Stampede Energy LLC, Stampede Crude Dakota, LLC, Jamex, LLC, Jorgan Development, LLC, or any of their officers, directors, employees, attorneys, shareholders, parents, subsidiaries, affiliates or successors or assigns, that it, he, or she is entitled to any payments or other benefits relating to or arising from the subject matter of the Jamex-Shell Confirmation, the Whiting-Shell Confirmation, the Amended Whiting-Shell Confirmation, the Whiting Lawsuit, or the Shell Lawsuit.

3.4.     **Matters Involving the Plan.** Jamex and Ballengee shall not directly or indirectly oppose, or directly or indirectly cause any person or entity to oppose, the solicitation, confirmation, and consummation of the Plan, the Chapter 11 Cases, and any transactions contemplated thereby to the extent the Plan does not modify and is materially consistent with this Agreement.

3.5.     **Destruction of Documents.** Within ten (10) days after Jamex has received the Jamex Payment, Jamex and Ballengee shall destroy any such materials received related to (i) the Whiting Lawsuit; (ii) the Shell Lawsuit; (iii) the Chapter 11 Cases, including all document requests related to venue requests; and (iv) Jamex's role as a member of the official committee of unsecured creditors in the Chapter 11 Cases. Counsel to Jamex and Ballengee shall confirm to the Whiting Debtors in writing that all such materials have been destroyed (email shall suffice).

3.6.     **Confidentiality.** In addition to any other obligations of confidentiality between the Parties, Jamex and Ballengee agrees to hold in confidence and not disclose to any party any information regarding the Chapter 11 Cases except as expressly contemplated by this Agreement (the "Confidential Information"); *provided* that if any party seeks to compel Jamex's or Ballengee's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Jamex or Ballengee intends to disclose any or all of the Confidential Information, Jamex or Ballengee shall immediately provide the Whiting Debtors with prompt written notice so that the Whiting Debtors may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided, further,* that, if such remedy is not obtained, Jamex or Ballengee shall furnish only such information as Jamex or Ballengee is legally required to provide.

3.7.    **Claims Standstill.**  Jamex and Ballengee and each of their and his respective affiliates, partners, officers, managers, shareholders, members, employees, agents, attorneys, accountants, transferees, trustees, representatives, advisors, successors and assigns, and any and all other persons, firms, corporations, or entities that could or might act on their behalf agree that they will not directly or indirectly acquire, through participation agreement or otherwise, any claims or the right to control any claims against the Whiting Debtors or Shell.

3.8.    **Acknowledgement.**  Nothing in this Agreement is intended to be an admission of guilt or liability by any Party, but rather this is a compromise and settlement of disputed claims for which all liability is denied by all Parties.  Further, by making the Whiting Payment and the Jamex Payment, Shell is making no admission that any actions it has taken with respect to the Whiting-Shell Confirmation, Amended Whiting-Shell Confirmation, or the Jamex-Shell Confirmation were improper or that Shell owes any interest or late payment penalty with regard to such payments.  Any or all liability by Shell in this regard is hereby denied.

3.9.    **Non-Reliance and Waiver of Fraudulent Inducement.** In accordance with *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997), *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008), *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323 (Tex. 2011), and *Int'l Business Machines Corp. v. Lufkin Industries, LLC*, 573 S.W.3d 224 (Tex. 2019), Jamex, Ballengee and Whiting expressly disclaim and waive any claim or allegation of fraudulent inducement with respect to this Agreement generally and with respect to the releases in this Agreement specifically. Jamex, Ballengee and Whiting also expressly disclaim any reliance on any representation, statement, or omission made by any person, including but not limited to any other Party or any agent, attorney, or representative of any other Party, relating in any way to the negotiations, subject matter, basis, reasonableness, or effect of this Agreement, including but not limited to the releases in this Agreement. To avoid any possible doubt, Jamex, Ballengee and Whiting expressly warrants, represents, agrees, and acknowledges the following:

(a.)    Neither Jamex, Ballengee nor Whiting are relying on any statement or representation, whether oral, written, or otherwise, other than the representations and warranties made specifically by the Parties in this Agreement.

(b.)    The terms of this Agreement were negotiated, rather than boilerplate, and Jamex, Ballengee and Whiting specifically discussed issues covered by the Agreement, including the releases in it.

(c.)    Jamex, Ballengee and Whiting are knowledgeable in business matters.

(d.)    No promise or agreement that is not contained in writing in this Agreement has been made to Jamex or Whiting in connection with executing this Agreement and the releases contained in this Agreement.

(e.)    Jamex, Ballengee and Whiting are relying solely on his or its own judgment and advice of his or its counsel when deciding whether to enter into this

DocuSign Envelope ID: 32A2B33A-74BD-4C63-A8BB-C19591EA66F3

Agreement. Each have been represented by legal counsel who have read and explained to the Party the entire contents of this Agreement, and the legal consequences of entering into this Agreement.

(f.) Jamex. Ballengee and Whiting enter into this Agreement freely and without duress and does so after full opportunity to consult with the legal counsel and other professionals of his or its choice.

(g.) Jamex, Ballengee and Whiting's willingness to enter into this Agreement was and is based on arm's-length negotiations.

(h.) Neither Jamex, Ballengee nor Whiting will make any future claim that he or it was fraudulently induced to enter into this Agreement by way of any false or misleading statements, representations, omissions, or non-disclosures (whether oral, written, or otherwise).

3.10. **Governing Law and Attorneys' Fees.** This Agreement shall be governed by and construed under the laws of the State of Texas. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement. The prevailing Party in any lawsuit or other legal proceeding in which a Party seeks to interpret or enforce this Agreement will have the right to recover its or his reasonable attorneys' fees from each non-prevailing Party.

3.11. **Disclaimer and Waiver of Fraud Claims**. Jamex and Ballengee and Whiting disclaim that they or he are relying on any statement or representation that is not expressly set out in this Agreement and waives any claim of fraud or fraudulent misrepresentation relating to or concerning this Agreement.

3.12. **Successors and Assigns**. This Agreement may not be assigned or transferred.

3.13. **No Third-Party Beneficiaries**. This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns, and it shall not inure to the benefit of any other person or party whomsoever or whatsoever, it being the intention of the Parties that no non-Party shall be deemed a third-party beneficiary of this Agreement. Notwithstanding the foregoing, the Jamex Releasees, the Shell Releasees and the Whiting Releasees shall be entitled to enforce this Agreement solely with respect to the releases contemplated hereby.

3.14. **Amendment.** This Agreement may not be amended, waived, or modified except in a writing that is signed by all Parties.

3.15. **Notices**. Any notice, statement, claim or other communication required or permitted hereunder shall be in writing and deemed delivered when received by the intended recipient by (i) electronic transmission (as long as such transmission has been confirmed by the recipient), (ii) hand delivery, (iii) United States mail, postage prepaid and properly addressed or (iv) courier service at the following addresses:

**If to the Whiting Debtors:**

Whiting Oil and Gas Corporation
1700 Lincoln Street, Suite 4700
Denver, Colorado 80203
Attention: M. Scott Regan
Telephone: (303) 802-8336
Email: scott.regan@whiting.com

**If to Jamex or Ballengee:**

James Ballengee
Jamex Marketing, LLC
2278 Monitor Street
Dallas, Texas 75207
Email: James_Ballengee@yahoo.com

**If to Shell:**

STUSCO
Shell Trading (US) Company
1000 Main St., Floor 12
Houston, Texas 77002
Attention: John Dimech
with copy to: General Counsel
Telephone: (713) 230-1947
Email: leasecontractadmin@shell.com

*Signature Pages Follow*

**EXECUTION VERSION**

**WHITING PETROLEUM CORPORATION**

DocuSigned by:

*Bradley J. Holly*

E116341E0E884B6...

Name:  Bradley J. Holly

Title:  President and Chief Executive Officer

Date:   June 4, 2020

**WHITING OIL AND GAS CORPORATION**

DocuSigned by:

*Bradley J. Holly*

E116341E0E884B6...

Name:  Bradley J. Holly

Title:  President and Chief Executive Officer

Date:   June 4, 2020

**SHELL TRADING (US) COMPANY**

DocuSigned by:

*John J. Dimech*

47B308B5C2E5450...

Name: John D. Dimech

Title:  President

Date:   June 4, 2020

DocuSigned by:

*James H. Ballengee*

325B40C9750C44A...

James H. Ballengee, Individually

Date:   June 4, 2020

**JAMEX MARKETING, LLC**

DocuSigned by:

*James H. Ballengee*

325B40C9750C44A...

James H. Ballengee, Manager

Date:   June 4, 2020

13

**ACKNOWLEDGED AND AGREED (WITHOUT ADMITTING THAT ANY OF THE FOLLOWING ENTITIES HAVE THE RIGHT TO ASSERT ANY CLAIMS ARISING FROM THE MATTERS DESCRIBED IN THIS AGREEMENT)**

**STAMPEDE ENERGY, LLC**

*James H. Ballengee*

Name: James H. Ballengee
Title: Manager
Date:   June 4, 2020

**STAMPEDE CRUDE DAKOTA, LLC**

*James H. Ballengee*

Name: James H. Ballengee
Title: Manager
Date:   June 4, 2020

**JORGAN DEVELOPMENT, LLC**

*James H. Ballengee*

Name: James H. Ballengee
Title: Manager
Date:   June 4, 2020

**JAMEX, LLC**

*James H. Ballengee*

Name: James H. Ballengee
Title: Manager
Date:   June 4, 2020

DocuSign Envelope ID: 32A2B33A-74BD-4C63-A9BB-C19591EA66E3

## <u>EXHIBIT A</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| WHITING PETROLEUM CORPORATION, | ) Case No. 20-32021 (DRJ) |
| *et al.*,[1] | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) **Re: Docket No. __** |

## ORDER APPROVING SETTLEMENT AGREEMENT
## BETWEEN THE DEBTORS, SHELL TRADING (US)
## COMPANY, JAMEX MARKETING, LLC, AND JAMES H. BALLENGEE

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) approving the terms of the Agreement attached as **Exhibit 1** hereto and (b) authorizing the Debtors to perform any and all obligations contemplated in the Agreement, all as more fully set forth in the Motion; and upon the Stein Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

DocuSign Envelope ID: 32A2B33A-74BD-4C63-A8BB-C19591FA66F2

**EXECUTION VERSION**

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, the Agreement is authorized and approved in its entirety.

3.      The Debtors are authorized to execute, deliver, and implement the Agreement, and the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Settlement Agreement and not for any other purpose.

4.      The Debtors are authorized to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated in the Agreement and this Order.

5.      The releases contained in the Agreement, including as set forth in sections 2.3(b), 2.3(c) and 2.3(d), are hereby approved in their entirety.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors and the Claimants are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

DocuSign Envelope ID: 32A2B33A-74BD-4C63-A9BB-C19591FA66F3

**EXECUTION VERSION**

8.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Houston, Texas
Dated: _____, 2020

_____
JUDGE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

EXECUTION VERSION

## EXHIBIT B

The following are instructions for wiring to RM's IOLTA account:

Business Name:                Reese Marketos LLP IOLTA
                                     750 N. St. Paul St. #600
                                     Dallas, TX 75201-3201

Bank:  Pegasus Bank Dallas
                  Attn: Missy Pearcy
                  4515 W. Mockingbird Lane
                  Dallas, TX 75209
                  214.353.3000

**EXECUTION VERSION**

## **EXHIBIT C**

Whiting Wiring Instructions

Company Name:          Whiting Oil and Gas

Name of Bank:          JPMorgan Chase Bank, N.A.

**Wire Info:**

ABA # for Wires:       ███████

Account #:             ███████

City/State:            New York, NY

SWIFT Code:            ███████

**ACH Info:**

ABA # for ACHS:        ███████

Account #:             ███████

City/State:            Denver, CO

Please send Remittance Info to:
Name:                  Treasury@whiting.com

5